[Cite as *Wasserstrom v. Battelle Mem. Inst.*, 2016-Ohio-7943.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Cheryl S. Wasserstrom, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 15AP-849 |
| v. | : | (C.P.C. No. 13CV-13871) |
| Battelle Memorial Institute et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

# D E C I S I O N

## Rendered on November 29, 2016

**On brief:** *Law Offices of Russell A. Kelm, Russel A. Kelm* and *Colleen M. Koehler,* for appellant. **Argued:** *Russell A. Kelm.*

**On brief:** *Ice Miller LLP, James E. Davidson* and *Catherine L. Strauss,* for appellees. **Argued:** *James E. Davidson.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Plaintiff-appellant, Cheryl S. Wasserstrom ("plaintiff" or "appellant"), appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendants-appellees, Battelle Memorial Institute, Thomas Snowberger, and Jeffrey Wadsworth ("defendant" or "appellee"). Because appellant failed to establish a prima facie case of age discrimination or other reversible error, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The trial court stated the pertinent facts:

Plaintiff served as a Senior Administrative Assistant in the Human Resources Department at Defendant Battelle Memorial Institute (hereinafter "Battelle"), providing support to the Vice President of Talent Management, Mark Sullivan, administering the tuition reimbursement program, and

coordinating the executive leadership program. In September 2013, after nearly 35 years of employment, Plaintiff was terminated pursuant to a reduction in force (hereinafter "RIF") at age 56.

* * *

By September 2013, the executive leadership program, which coordinated travel and support for executives attending various events, had diminished significantly. * * * No events were held in 2013 and Plaintiff considered this portion of her job duties to have ended by the time her position was eliminated. * * * When Mark Sullivan's position was eliminated, Plaintiff's administrative support duties were eliminated and her position was limited to the tuition reimbursement program, which also faced cut backs.

(Aug. 14, 2015 Decision & Entry at 1-2, 7-8.)

{¶ 3} Prior to the 2008 recession, appellee Battelle employed approximately 5,ooo people at its Columbus headquarters. However, over the past 6 years, Battelle downsized its employee population in Columbus to approximately 3,500. The same economic challenges caused Battelle to cut back on many programs, including the leadership program. At the time of the 2013 reduction in force ("RIF"), appellee, Thomas Snowberger, was employed by Battelle as the Senior Vice President for Human Resources ("HR"). Wasserstrom's supervisor, Mark Sullivan, reported directly to him. Appellee, Dr. Jeffrey Wadsworth, is the president and CEO of Battelle, and he supervised Snowberger.

{¶ 4} When the decision was made that a RIF was necessary, executive committee members made the decision to eliminate personnel on a work-group by work-group basis. The decisions were then substantiated by an internal RIF justification memorandum. Snowberger made the decision to eliminate plaintiff's position and he authored plaintiff's RIF justification memorandum.

{¶ 5} The memorandum was given to Wasserstrom on August 23, 2013, and states in relevant part:

To ensure competitiveness of Battelle's cost structure, the corporate functions were required to develop plans to reduce overall corporate FY14 costs by $10,000,000 from the adjusted FY13 budget levels. As a result, a thorough review of each functional area within HR was conducted to identify opportunities to consolidate or eliminate positions and

services. The goal of this review was to achieve an overall budget reduction for HR of $900k. Several cost saving actions were identified for HR including the elimination of two positions within Talent Management. This document provides the rationale for the reduction of the two selected positions.

* * *

One Sr. Administrative Assistant is a direct report to the VP of Talent Management. The primary responsibilities of this position are to provide administrative support exclusive to the VP of Talent Management and to administer the Tuition Reimbursement Program.

* * *

After thorough review and consideration, the decision was made to eliminate two positions, the VP of Talent Management and the Sr. Administrative Assistant that provides exclusive support to that position * * *. With the elimination of the VP of Talent Management position, the Sr. Administrative Assistant that provides exclusive support to that position will also be eliminated. Responsibility for the tuition reimbursement program will be transferred to HR Operations and combined with another transactional role.

(Aug. 14, 2015 Decision & Entry at 8.)

{¶ 6} On December 30, 2013, Wasserstrom filed a lawsuit against Battelle, Snowberger, and Wadsworth, alleging that she was unlawfully terminated from her employment at Battelle on the basis of her age. (Compl. at ¶ 19.) Appellees have countered that Wasserstrom's job was eliminated in a RIF necessitated by budgetary concerns and legitimate recession-related business pressures. (June 23, 2015 Decision & Entry at 2.)

{¶ 7} On March 6, 2015, Battelle filed a motion for summary judgment arguing that Wasserstrom cannot establish a prima facie case of age discrimination and that plaintiff's employment was terminated for legitimate business reasons. On July 10, 2015, plaintiff filed her memorandum in opposition arguing that she can establish a prima facie case and can demonstrate that Battelle's budgetary justification is a pretext for age discrimination. On the same day, she also filed a "motion for leave to rely on the opinions of human resources expert, Kemper Campbell, in her opposition" to Battelle's motion for summary judgment. (Aug. 14, 2015 Decision & Entry at 2.)

{¶ 8} On August 14, 2015, the trial court denied Wasserstrom's motion for leave to rely on the opinions of the human resources expert "[f]or the reasons stated in its

previous rulings, the Court finds Plaintiff's motion for leave not well taken. Further, the Court agrees with Defendants that the proposed testimony of Kemper Campbell is largely irrelevant and speculative." (Decision & Entry at 4.) In regards to the motion for summary judgment, the trial court finds that Wasserstrom has failed to establish a prima facie case of age discrimination because she "has failed to demonstrate that she was 'replaced' by a substantially younger person." (Decision & Entry at 7.) The trial court notes that "even if Plaintiff could establish a prima facie case, she has failed to demonstrate that Defendants' justification of her termination is a pretext for age discrimination." (Decision & Entry at 7.) As such, the trial court "finds that no issues of material fact remain in this case, and Defendants are entitled to judgment as a matter of law. Defendants' motion for summary judgment is well taken." (Decision & Entry at 9.)

{¶ 9} On September 10, 2015, appellant filed a notice of appeal from the "Court's Judgment Entry dated August 14, 2015, in which the Court memorialized the Written Decisions granting defendants' Motion for Summary Judgment, and from all prior orders of the Court blocking meaningful discovery in the case." (Appellant's Notice of Appeal at 1-2.)

## II. ASSIGNMENTS OF ERROR

{¶ 10} Wasserstrom appeals, assigning the following errors:

> [I.] THE TRIAL COURT ERRED IN REFUSING TO COMPEL PRODUCTION OF STATISTICAL DATA REGARDING THE REDUCTION IN FORCE IN WHICH PLAINTIFF WASSERSTROM WAS TERMINATED.
>
> [II.] THE TRIAL COURT ERRED IN HOLDING PLAINTIFF WASSERSTROM FAILED TO PROVE A PRIMA FACIE CASE OF AGE DISCRIMINATION.
>
> [III.] THE TRIAL COURT APPLIED AN INAPPROPRIATE STANDARD IN ASSESSING WHETHER PLAINTIFF WASSERSTROM SHOWED AN ISSUE OF MATERIAL FACT AS TO WHETHER BATTELLE'S ALLEGED LEGITIMATE BUSINESS JUSTIFICATION IS PRETEXTUAL.
>
> [IV.] THE TRIAL COURT ERRED IN EXCLUDING CONSIDERATION ON SUMMARY JUDGMENT OF THE AFFIDAVIT OF HUMAN RESOURCES EXPERT KEMPER CAMPBELL.

## III. STANDARD OF REVIEW

{¶ 11} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997). "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Bank Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997).

{¶ 12} Summary judgment is proper only when the party moving for summary judgment demonstrates that: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in that party's favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 13} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims. *Id.* If the moving party meets this initial burden, then the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

## IV. AGE DISCRIMINATION LAW

{¶ 14} Appellant claims that "[d]efendants actions constitute age discrimination against plaintiff, in violation of R.C. 4112.02(A)." (Compl. at ¶ 19.) R.C. 4112.02(A) provides that "[i]t shall be an unlawful discriminatory practice: (A) For any employer, because of * * * age * * * to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

Ohio courts may rely on federal anti-discrimination case law. *See Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 582 (1996).

{¶ 15} "To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent. * * * Discriminatory intent may be proven by either direct or indirect evidence." *Hardgrow v. Dept. of Rehab. & Corr.*, 10th Dist No. 11AP-919, 2012-Ohio-2731, ¶ 18; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Appellant has not presented any direct evidence of discriminatory intent. When a plaintiff seeks to establish age discrimination indirectly, as here, the plaintiff may establish discriminatory intent by utilizing the analysis set forth in *McDonnell Douglas*, as first adopted and modified by Ohio courts in *Barker v. Scovill, Inc.,* 6 Ohio St.3d 146 (1983), and lastly by *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723.

{¶ 16} The plaintiff must first establish a prima facie case of age discrimination. By satisfying the prima facie case, the plaintiff creates a presumption that the employer unlawfully discriminated against the employee. *Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 11. A prima facie case of employment discrimination may be established by proof (1) that the plaintiff was a member of a protected class, (2) that the plaintiff suffered an adverse employment action, (3) that the plaintiff was qualified for the position they lost, and (4) either that the plaintiff was replaced by someone outside the protected class, *see McDonnell Douglas* at 802, or that "a comparable non-protected person was treated better." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992). *See also Caldwell v. Ohio State Univ.*, 10th Dist. No. 01AP-997, 2002-Ohio-2393, ¶ 62.

{¶ 17} In *Coryell*, the court further modified the fourth element of the prima facie analysis, stating that the plaintiff must establish that they were "replaced by, or the discharge permitted the retention of, a person of substantially younger age." *Coryell* at paragraph one of the syllabus. "In order to prove under R.C. 4112.02 that a person of substantially younger age replaced her, plaintiff cannot merely recite that the defendant hired new employees, but instead must present evidence that another employee actually replaced her by assuming a 'substantial portion' of her duties." *Mittler v. OhioHealth Corp.*, 10th Dist. No. 12AP-119, 2013-Ohio-1634, ¶ 25, quoting *Mazzitti v. Garden City Group, Inc.*, 10th Dist. No. 06AP-850, 2007-Ohio-3285, ¶ 22. However, " '[i]n RIF cases, the fourth prong of the prima facie test is modified to require the employee to offer additional direct; circumstantial; or statistical evidence tending to indicate that the

employer singled him out for impermissible reasons.' " *Jelinek v. Abbott Laboratories,* 10th Dist. No. 11AP-996, 2013-Ohio-1675, ¶ 29, quoting *Karsnak v. Chess Fin. Corp.,* 8th Dist. No. 97312, 2012-Ohio-1359, ¶ 26.

{¶ 18} In employment discrimination cases, courts use a three-stage burden shifting procedure set forth in in *McDonnell Douglas* and *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). First, the plaintiff must establish by a preponderance of the evidence a prima facie case of discrimination, thereby creating a rebuttable presumption that the defendants unlawfully discriminated against the plaintiff. Second, assuming the plaintiff has established a prima facie case, the burden shifts to the defendants to produce evidence which, taken as true, establishes a legitimate, non-discriminatory reason for the adverse action. If the defendants carry their burden of production, the prima facie case is rebutted. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). Finally, after the defendant has proffered a legitimate, non-discriminatory reason for their adverse action, the burden shifts back to the plaintiff to demonstrate the proffered reason is pretext for unlawful discrimination.

## V. FIRST ASSIGNMENT OF ERROR–STATISTICAL DATA

{¶ 19} The first assignment of error involves the trial court's denial of appellant's requests for further discovery. The standard of review of a trial court's decision in a discovery matter is whether the court abused its discretion. *Mauzy* at 592. Although unusual, a discovery order may be reversed when the trial court has erroneously denied or limited discovery. *Id.* As such, " 'an appellate court will reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights.' " *Id.,* quoting *Rossman v. Rossman,* 47 Ohio App.2d 103, 110 (8th Dist.1975). "Abuse of discretion" implies that the court acted in an unreasonable, arbitrary, or unconscionable manner. *State ex rel. Denton v. Bedinghaus,* 98 Ohio St.3d 298, 2003-Ohio-861, ¶ 31; *Young v. Locke*, 10th Dist. No. 13AP-608, 2014-Ohio-2500, ¶ 14.

{¶ 20} Appellant argues that the information and documents she requested to support her belief that appellee's RIF had a disproportionate effect on older employees was relevant to her age discrimination claim, and that the court's failure to compel production of the requested information and documents affected her substantial rights and, consequently, constituted error. (Appellant's Brief at 17.) She argues that statistical

evidence is sufficient to prove a prima facie case of discrimination, as well as to rebut the defense of a RIF being employed, citing *Barnes v. GenCorp., Inc*, 896 F.2d 1457, 1466 (6th Cir.1990). Therefore, it was improvident for the trial court to deny appellant's motions to compel and, in turn, deny her access to relevant statistical data. (Appellant's Brief at 25.)

{¶ 21} In order to address appellant's assignment of error, it is necessary to review her motions to compel, the hearing of December 4, 2014, and the trial court's decisions and entries.

A. *Wasserstrom's Motion to Compel Discovery filed June 6, 2014, and the Court's Decision and Entry filed September 12, 2014*

{¶ 22} The trial court noted that on April 10, 2014, plaintiff served defendant with her first set of interrogatories and first request for the production of documents. At issue are plaintiff's 28th and 29th document requests, which state:

> 28. Produce all statistics produced to any employee included in a reduction in force at Battelle since January 1, 2000 in compliance with the Older Workers Benefit Protection Act, 29 U.S.C. §626(f)(1)(H)(i) and (ii).
>
> * * *
>
> 29. As to each reduction in force since January 1, 2000 at Battelle, produce all documents prepared at the time which disclose the job titles and ages of all individuals eligible or selected for the reduction in force, and all individuals in the overall workforce who were not selected for inclusion in the reduction in force.

(June 6, 2014 Aff. of Russell A. Kelm at 20.) Plaintiff submits that she requires this data for the purpose of providing it to a statistician. Defendant refuses to comply, asserting that plaintiff cannot meet her burden in this matter with a statistical analysis. (Sept. 12, 2014 Decision & Entry at 1-2.)

{¶ 23} Plaintiff filed the motion to compel on June 6, 2014, requesting that the court order defendants to produce "discovery requested by plaintiff relating to the statistics of the ages and positions of those included and not included in a RIF conducted at Battelle in August and September of 2013." (Pl.'s Mot. to Compel Discovery at 1.) The trial court notes that this request was substantially narrowed from plaintiff's initial

request which related to reductions in force dating back to January 1, 2000. (Decision & Entry at 2.)

{¶ 24} Defendants focus their opposition on the breadth of plaintiff's request. Defendants submit that Battelle has had as many as 5,000 employees in recent years and assert that providing information on all would be overly burdensome. In the alternative, defendants offer to provide data relating to the department where plaintiff was assigned, i.e., the HR department. (Decision & Entry at 2.)

{¶ 25} In her reply, plaintiff denies defendants' assertion that her request would yield data on thousands of employees not included in the RIF. Plaintiff also rejects defendants offer to provide data relating only to employees in plaintiff's department, asserting that the data would not be sufficient to create an analysis of any statistical significance. (Decision & Entry at 2-3.)

{¶ 26} The trial court held that:

> The issue presently before the Court is whether to compel Defendants to comply with Plaintiff's request *as it was served on April 10, 2014*. Although Plaintiff has significantly altered and tailored her request since that time, the Court finds Plaintiff's *original request* for data relating to every Battelle employee that either was or was not included in a reduction in force dating back to January 1, 2000, to be overly broad.
>
> Accordingly, Plaintiffs Motion to Compel, filed June 6, 2014, is hereby DENIED.

(Emphasis added.) (Decision & Entry at 3.)

B. *The evidentiary hearing held December 4, 2014, and the Court's Entry filed January 28, 2015*

{¶ 27} After the discovery disputes persisted between the parties, the court scheduled an evidentiary hearing for December 4, 2014. In advance of the hearing, the parties submitted memoranda to the court supporting their positions in the pending disputes. At the hearing, plaintiff took the stand and testified that Snowberger was in charge of the business unit in which she worked and made the decision to eliminate her position. Mary Ungar, the current senior vice president of HR at Battelle, testified concerning the process involved in the September 2013 RIF. Ungar testified that

Snowberger was the head of plaintiff's work group and made the decision as to which employees in that unit were included in the RIF. (June 23, 2015 Decision & Entry at 3.)

{¶ 28} After the hearing, the court found:

> This matter came before the Court on December 4, 2014, for an evidentiary hearing regarding the scope of discovery. The Court has considered all of the evidence and arguments presented by counsel.
>
> The evidence presented indicates that each termination decision was made at the business unit level. Accordingly, at most, Plaintiff is entitled to the dates of birth and position titles for each Human Resources employee *included in the August and September 2013 RIF* in which Defendant Thomas D. Snowberger was the principal decision maker. Defendants submit that this information has already been produced.
>
> Accordingly, Plaintiff's request for any further data is hereby DENIED.

(Emphasis added.) (Jan. 28, 2015 Entry at 1.)

C. *Wasserstrom's Motion to Compel Discovery filed March 20, 2015, and the Court's Decision and Entry filed June 23, 2015*

{¶ 29} Appellees had already produced what the trial court held was discoverable in the entry of January 28, 2015, i.e., the dates of birth and position titles for each human resources employee included in the August and September 2013 RIF in which Snowberger was the principal decision maker. This prompted plaintiff to file another motion to compel production of discovery on March 20, 2015.

{¶ 30} The trial court noted that, "[i]n her motion to compel, Plaintiff submits that there are several outstanding discovery disputes which the Court failed to address in its January 28, 2015 ruling." (June 23, 2015 Decision & Entry at 4.)

{¶ 31} First, plaintiff asserts that the trial court failed to address defendants' inadequate responses to her interrogatory Nos. 4 and 5, which state:

> 4. Identify all employees who were in administrative assistant positions for Battelle on September 1, 2013, and state their date of birth, date of hire, supervisor and current status with Battelle.

5. Identify all employees hired or promoted into any administrative assistant position at Battelle since September 1, 2013, and state their date of birth, date of hire, department and supervisor.

(June 6, 2014 Aff. of Russell A. Kelm at 6-7.) Based on the court's entry of January 28, 2015, the court ruled that plaintiff was not entitled to the company wide discovery sought in these requests. As such, the court ruled that plaintiff's motion to compel defendants to produce additional data in response to her interrogatory Nos. 4 and 5 was not well-taken. (June 23, 2015 Decision & Entry at 4-5.)

{¶ 32} Plaintiff next requests that the court order defendants to respond to interrogatory No. 6, which states:

6. Identify all employees included in any employment termination or exit incentive program in 2013, and as to each set forth:

(a) their name, address, position or title and date of birth;

(b) the name, position or title, and date of birth of those not included and who remained employed; and

(c) the name, position or title and date of birth of all employees asked or encouraged to resign who actually resigned.

(Aff. of Russell A. Kelm at 7.) Plaintiff argued that she needs the information about employees in Snowberger's work group who were not included in the RIF in order to attempt a statistical analysis. However, the court noted that this interrogatory is not so limited. Plaintiff's interrogatory again seeks company wide discovery, which the court has denied in the entry of January 28, 2015. As such, the court found that plaintiff's request was not well-taken. (June 23, 2015 Decision & Entry at 5.)

{¶ 33} Plaintiff then asserts that defendants failed to properly respond to her third request for production, which states:

3. Produce any and all documents, including but not limited to, notes, diaries, calendars, memorandums, e-mail, and correspondence, kept or maintained by defendants relating to or mentioning plaintiff.

(Aff. of Russell A. Kelm at 13.) Defendants objected to this request on the basis that it was overly broad. Plaintiff alleges that she has narrowed her request to documents relating to her employment. However, the court found that:

> [T]he issue presently before the Court is whether Defendants should be compelled to comply with *Plaintiff's original request as served. The Court has not been provided with a more narrowly tailored request that has been properly served on Defendants.* The Court agrees that Plaintiff's original request is overly broad. As such, Plaintiff's motion to compel Defendants to respond to her request is not well taken.

(Emphasis added.) (Decision & Entry at 6.)

{¶ 34} Plaintiff also requested additional documents related to defendants' financial records. Generally, she sought documents relating to its current and projected business conditions on which defendant based its decision that the 2013 RIF was necessary. Defendant responded that deposition questions related to budgetary issues were answered fully, that defendant reports its financial performance publicly, and that plaintiff failed to demonstrate why the public information was not sufficient. The court agreed with defendant and found that plaintiff's request for additional financial records was not well-taken. (Decision & Entry at 6.)

{¶ 35} Plaintiff also sought an order compelling defendant to allow a Civ.R. 30(B)(5) deposition on eight specific topics relating to the 2013 RIF. However, the court found that plaintiff was once again seeking company wide information about the 2013 RIF, which was in conflict with the entry of January 28, 2015, and denied the same. (Decision & Entry at 6-7.)

{¶ 36} Our review of the court's decisions and entries show that the court did not abuse its discretion in finding that appellant's requests that were properly before the court were overly broad, had been sufficiently addressed, or were in conflict with past court decisions. We also note that if the trial court found in favor of a more broad scope for plaintiff's discovery requests, then such a decision, based on our current facts, would also have been within the trial court's broad discretion on discovery issues. As said, we will not substitute our judgment for that of the trial court.

{¶ 37} In addition, in regards to the court's entry of January 28, 2015, the transcript of the evidentiary hearing of December 4, 2014, is not included in the record.

The only record of the hearing before this court is an excerpt of the testimony of Mary Ungar, the current senior vice president of HR at Battelle, which was filed on January 6, 2015. In *Pullman Power Prods. Corp. v. Adience, Inc.,* 10th Dist. No. 02AP-493, 2003-Ohio-956, ¶ 14, we stated:

> An appellant must "* * * identify in the record the error on which the assignment of error is based * * *." App.R. 12(A)(2); *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384. An appellant bears the burden of ensuring that a reviewing court has all the materials necessary to enable it to review the trial court's determination, which, in this case, would require a review of the parties' motions for summary judgment. See App.R. 9 and 10; *Ham v. Park* (1996), 110 Ohio App.3d 803, 809, 675 N.E.2d 505; *Hildebrecht v. Kallay* (June 11, 1993), Lake App. No. 92- L-189, 1993 Ohio App. LEXIS 2966. "When portions of the [record] necessary for resolution of the assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp,* supra.

{¶ 38} From the record before us, we agree with the court that Ungar testified concerning the process involved in the September 2013 RIF, and that Snowberger was the head of plaintiff's work group and made the decision as to which employees in that unit were included in the RIF. (Decision & Entry at 3.) However, we have nothing before us regarding the testimony of other witnesses, or the arguments of counsel regarding the appropriate scope of discovery. In the instant case, appellant has failed to provide this court with an adequate record to determine the merits of its appeal as it pertains to the trial court's entry of January 28, 2015. In the absence of an adequate record, this court must presume the regularity of the trial court's actions. *See Pullman* at ¶ 15.

{¶ 39} For the foregoing reasons, appellant's first assignment of error is overruled.

## VI. SECOND ASSIGNMENT OF ERROR—NO PRIMA FACIE CASE OF AGE DISCRIMINATION

{¶ 40} Appellee concedes that appellant fulfilled the first three prongs of her prima facie case of age discrimination. However, they maintain she could not fulfill the fourth prong, which requires proof "that she was replaced by a substantially younger person or that a comparable, substantially younger person was treated more favorably." (Appellant's Brief at 26-27; Aug. 14, 2015 Decision & Entry at 5.) Appellant argues that she has been

replaced by Angela Fox and rejected for a position that was ultimately awarded to a substantially younger, external candidate, Dawn Ferrell. (Appellant's Brief at 29.)

{¶ 41} Appellant's job functions were divided into three categories: administrative assistant to Mark Sullivan, administration of the executive leadership training program, and tuition reimbursement. (Aug. 14, 2015 Decision & Entry at 1-2.). Appellant does not dispute that the first two job functions no longer exist. She claims only that she was unlawfully replaced by Fox, an existing employee, who assumed the tuition reimbursement functions. It is well-established that "[a] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Mazzitti v. Garden City Group, Inc.*, 10th Dist. No. 06AP-850, 2007-Ohio-3285, ¶ 19.

{¶ 42} Here, Fox assumed one relatively minor aspect of appellant's former job duties; the balance of her functions were eliminated with the departure of Sullivan. Fox spent approximately 10-15 percent of her time on the tuition reimbursement task when it was first reassigned to her. (Fox Aff. at ¶ 4.) Since the initial transfer of that work, that minimal number actually lessened to less than 10 percent. (Fox Aff. at ¶ 5.) According to Fox, she spends the other 90 percent of her time performing the same duties she performed prior to taking over the tuition reimbursement program, i.e., acting as an immigration and relocation coordinator and organizing employees' international and short-term domestic assignments. (Fox Aff. at ¶ 2.)  Although appellant claimed the tuition reimbursement function was 60-75 percent of her job, it is clear that it is a very small component of Fox's job functions. There is no replacement as a matter of law where the existing employee "continues to perform substantially the same duties that she had performed prior to [appellant's] termination." *Mazzitti* at ¶ 21.

{¶ 43} Appellant also claims that the failure to assign her to a benefits position within the HR group, and instead hiring the younger external candidate Ferrell, who was 35 years old at the time, is evidence of discriminatory intent.  Appellant testified that she might have had a small "learning curve" for the job. (Wasserstrom Depo. at 235.) Appellant also testified regarding Battelle's reasoning for hiring Ferrell:

> Q. And did she tell you anything about why the external candidate distinguished himself or herself versus you?

> A. I don't recall other than she might have said that this individual had more extensive benefits work experience.

(Wasserstrom Depo. at 163.) A review of Ferrell's resume indicates that she had approximately five years of experience at a prior place of employment as a benefits coordinator. There is simply no evidence to show that Ferrell was treated more favorably because of her age.

{¶ 44} In the final analysis, appellant failed to establish the fourth element of a prima facie case, as she failed to present evidence indicating "that she was replaced by a substantially younger person or that a comparable, substantially younger person was treated more favorably," or that other reasonable evidence existed to raise an inference that appellee terminated her because of her age. Based upon our de novo review of the evidence, the trial court properly found that appellant failed to satisfy the fourth prong of the *McDonnell Douglas* and *Coryell* tests and, therefore, cannot establish directly or indirectly a prima facie case of age discrimination. For the foregoing reasons, appellant's second assignment of error is overruled.

## VII. THIRD ASSIGNMENT OF ERROR—MOOT

{¶ 45} The court held that "even if Plaintiff could establish a prima facie case, she has failed to demonstrate that Defendants' justification of her termination is a pretext for age discrimination." (Aug. 14, 2015 Decision & Entry at 7.) The court further states that "[p]laintiff has not provided any evidence to refute the statements or assessments made by Snowberger in the justification memorandum, and has therefore failed to demonstrate that Defendants' justification for her termination is a pretext for age discrimination." (Decision & Entry at 8.)

{¶ 46} Appellant argues that "[t]he trial court applied an inappropriate standard in the third stage of the *McDonnell Douglas* shifting burden analysis, which calls for a plaintiff to 'a produce enough evidence to . . . rebut, but not to disprove, the defendant's proffered rationale.' *Carter v. Toyota Tsusho America, Inc*, 529 Fed.Appx. 601, 609 (6th Cir.2013)." (Appellant's Brief at 29-30.) Appellant argues that rather than considering whether there was enough evidence to create an issue of material fact as to whether appellee's explanation is a pretext for age discrimination, the trial court assessed whether appellant had disproved the explanation.

{¶ 47} However, as appellant failed to establish a prima facie case of age discrimination, we need not further consider whether the trial court applied an inappropriate standard in addressing whether appellee's stated legitimate business justification for terminating appellant's job was a pretext for discrimination. *See Dautartas v. Abbott Laboratories*, 10th Dist. No. 11AP-706, 2012-Ohio-1709, ¶ 42 (noting that the "[a]ppellant's failure to establish a prima facie case of age discrimination through either direct or indirect methods of proof effectively ends [this court's] inquiry as a matter of law," and thus there was no reason to "proceed to the next two parts of the *McDonnell Douglas* analysis"); *Kowach v. Ohio Presbyterian Retirement Servs.*, 11th Dist. No. 2010-T-0033, 2010-Ohio-4428, ¶ 30. Accordingly, our ruling on appellant's second assignment of error renders appellant's third assignment of error moot.

## VIII. FOURTH ASSIGNMENT OF ERROR–EXCLUSION OF PROPOSED EXPERT AFFIDAVIT

{¶ 48} Appellant argues that the court erred in denying her request to rely on the affidavit of human resources expert Kemper Campbell ("Campbell") and ignoring his averments in deciding that summary judgment was warranted. Moreover, appellant argues there was good reason for her delay—she did not believe she would need the testimony of any additional expert witness until the court ruled on January 28, 2015 that defendants need not produce the information and documents necessary for her to conduct a statistical analysis of the fall 2013 RIF. (Appellant's Brief at 31, 33.)

{¶ 49} A trial court's decision regarding the admission or exclusion of witness testimony will not be reversed absent an abuse of discretion. *State v. Bond*, 10th Dist. No. 11AP-403, 2011-Ohio-6828, ¶ 1; *State ex rel. BDFM Co. v. Ohio Dept. of Transp.*, 10th Dist. No. 11AP-1094, 2013-Ohio-107, ¶ 60. The trial court provides the procedural history of this issue:

> On March 5, 2015, Plaintiff named two new expert witnesses: 1) Herbert L. Klein, to testify that when department heads are given financial goals for a RIF, a disproportionate selection of workers will be over age 40; and 2) Kemper Campbell, to testify that HR needs to be involved in a RIF when managers are given a dollar goal, as the tendency is for managers to select older employees.
>
> Defendants moved to exclude Plaintiff's newly disclosed experts on March 18, 2015. The supplemental witness

disclosure date established by the clerk's scheduling order was set for July 14, 2014. Yet, without leave, Plaintiff disclosed two new expert witnesses nearly eight months after the deadline, on the eve of the Court's discovery and dispositive motions cutoff date. Plaintiff responded, requesting leave to disclose her additional expert witnesses and submitting that she did not realize that she would need these expert witnesses until the Court's January 28, 2015 ruling. She further asserted that Defendants would not be prejudiced by the late disclosure as she did not intend to use either expert to support her opposition to summary judgment.

The Court found Plaintiff's explanation unpersuasive as the trial was originally set for December 29, 2014, but had been delayed as Plaintiff's counsel repeatedly sought overly broad discovery. On June 23, 2015, the Court granted Defendants' motion and excluded Plaintiff's two proposed expert witnesses.

(Aug. 14, 2015 Decision & Entry at 2-3.)

{¶ 50} The trial court went on to address plaintiff's motion for leave to provide expert human resources testimony in opposition to summary judgment, filed on July 10, 2015:

Plaintiff now moves for leave to rely on the opinions of her proposed human resources expert, Kemper Campbell, in her opposition to Defendants' motion for summary judgment. Plaintiff reiterates the same arguments previously rejected by the Court * * *.

Defendants cite these issues, among others, in their memorandum in opposition. Defendants further submit that Plaintiff is attempting to substitute expert testimony for a factual inquiry into whether Battelle followed its own RIF policies. Defendants also assert that Campbell's proposed testimony is inadmissible speculation * * *.

Plaintiff counters that * * * she needs Campbell's testimony to "show what the statistics would have shown."

* * *

For the reasons stated in its previous rulings, the Court finds Plaintiff's motion for leave not well taken. Further, the Court agrees with Defendants that the proposed testimony of Kemper Campbell is largely irrelevant and speculative.

(Decision & Entry at 3-4.)

{¶ 51} Our review shows that Campbell was disclosed as an expert on March 5, 2015, which was nearly eight months after the supplemental witness disclosure cut-off date. As such, Campbell was excluded as a witness by the court on June 23, 2015. On July 10, 2015, the same day that appellant filed a memorandum in opposition to defendant's motion for summary judgment and attached as exhibit No. 5 the affidavit of Campbell, she filed a motion and memorandum in support of leave to provide expert human resources testimony in opposition to summary judgment. Based on our review of the affidavit of Campbell, we agree with the trial court that his proposed testimony would be largely irrelevant and speculative in nature.

{¶ 52} As such, we find that the court did not abuse its discretion in denying appellant's motion for leave to provide expert human resources testimony in opposition to summary judgment. Appellant's fourth assignment of error is overruled.

## IX. DISPOSITION

{¶ 53} Having overruled appellant's assignments of error one, two, and four, thereby rendering the third assignment of error as moot, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, J., concurs.
LUPER SCHUSTER, J., concurs in judgment only.


LUPER SCHUSTER, J., concurring in judgment only.

{¶ 54} Although I concur in the judgment of the majority, I write separately to express my view that this court should not opine on issues not before us. The language in paragraph 36 of the majority decision regarding what our decision might have been, if the trial court had ordered a broader scope of discovery, is unnecessary to the resolution of this appeal. Further, that dictum appears to be inconsistent with the majority's statement in paragraph 38 regarding the limited record before us. Therefore, I concur in judgment only.

_____