[Cite as *Roty v. Batelle Mem. Inst.*, 2017-Ohio-9125.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ann Roty, et al., | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 16AP-266 |
| v. | : | (C.P.C. No. 14CV-2502) |
| Battelle Memorial Institute, et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 19, 2017

**On brief:** *Law Offices of Russell A. Kelm, Russell A. Kelm,* and *Colleen Koehler*, for appellants. **Argued:** *Russell A. Kelm.*

**On brief:** *Ice Miller, LLP*, *James E. Davidson, Catherine L. Strauss*, for appellees. **Argued:** *James E. Davidson.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiffs-appellants, Ann Roty and Mary Neff (collectively, "Roty and Neff"), appeal from a judgment of the Franklin County Court of Common Pleas entered on April 5, 2016 granting a motion for summary judgment filed by defendants-appellees, Battelle Memorial Institute, Jeffrey Perko, Jane Cozzarelli, Jeffrey Caspers, Gwendolyn Von Holten, Staci Palmer, and David Evans (collectively, "Battelle"). Because we find that the trial court erred in concluding that company-wide statistics showing the ages of employees retained and terminated during a 2013 reduction in force were so irrelevant as to not even be discoverable, we sustain Roty and Neff's first assignment of error. Because the resolution of that assignment of error will likely affect the summary judgment record, we find that the remaining assignments of error (all of which pertain to summary judgment) are rendered moot. We reverse and remand.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2}   On March 7, 2014, Roty and Neff filed suit against Battelle and certain supervisor and management employees of Battelle alleging age discrimination stemming from both Roty's and Neff's terminations during a 2013 reduction in force at Battelle. (Mar. 7, 2014 Compl.)  One of the claims made in the complaint was that the reduction in force was of disparate impact for workers over age 40, since they were allegedly disproportionately represented in the firings.  *Id.* at ¶ 14.  During the course of discovery, Roty and Neff moved the trial court for an order compelling Batelle "to produce discovery requested by plaintiffs relating to the statistics of the ages and positions of those included and not included in a reduction in force conducted at Battelle in August and September of 2013."  (June 12, 2014 Mot. to Compel at 1.)  The trial court referred all discovery disputes to a magistrate.

{¶ 3}   In December 2014, the trial court held an evidentiary hearing in another pending case also involving discrimination claims against Battelle in connection with its same 2013 reduction in force.  *See Wasserstrom v. Battelle Mem. Inst.*, Franklin C.P. No. 13CV-13871 (Aug. 14, 2015).  The trial court permitted the parties in both cases to jointly present evidence in support of their respective positions on the statistical data discovery question at issue on this appeal.

{¶ 4}   In Roty's and Neff's case, in a decision issued on February 23, 2015, the magistrate quoted from a decision issued by the judge in the *Wasserstrom* case:

> This matter came before the Court on December 4, 2014, for an evidentiary hearing regarding the scope of discovery. The Court has considered all of the evidence and arguments presented by counsel.
>
> The evidence presented indicates that each termination decision was made at the business unit level. Accordingly, at most, Plaintiff is entitled to the dates of birth and position titles for each Human Resources employee included in the August and September 2013 RIF in which Defendant Thomas D. Snowberger was the principal decision maker. Defendants submit that this information has already been produced.

> Accordingly, Plaintiff's request for any further data is hereby DENIED.

(Feb. 23, 2015 Mag. Decision at 4, quoting *Wasserstrom v. Battelle Mem. Inst.*, Franklin C.P. No. 13CV-13871 (Jan. 28, 2015 Entry).) Relying upon the *Wasserstrom* decision and the evidence adduced during the December 4, 2014 joint hearing, the magistrate concluded that the termination decisions in this case were also made at the business unit level. (Feb. 23, 2015 Mag. Decision at 4-5.) On that basis, the magistrate found that Roty and Neff were only entitled to discovery regarding the birthdates and position titles for each employee included in the August and September 2013 reduction in force in their single business unit. *Id.* at 5. The magistrate therefore denied Roty and Neff's request to compel Battelle to provide statistics reaching across all of Battelle's business units. *Id.* Because the order only authorized discovery for those "included" in the reduction in force, it could have been understood two ways. First, it could have authorized discovery for each person who fell within the ambit of the reduction in force plan, regardless of whether the person actually lost his or her job. Second, and more restrictively, it could also have applied only to those who were "included" in the reduction in force in the sense that they were terminated as part of the reduction in force. *Id.*

{¶ 5} On March 9, 2015, Roty and Neff filed timely objections to the magistrate's decision. (Mar. 9, 2015 Objs.) Roty and Neff argued that the case law supports the need for statistical evidence of the nature they sought, particularly for disparate impact claims. *Id.* at 4-10. Roty and Neff also pointed out that the magistrate's "limitation of the production to just one business unit [did] not take into account the fact that the [reduction in force] decisions were reviewed and approved by [human resources]." *Id.* at 1. In support of their observation that reductions in force were reviewed by human resources, the objections drew attention to the fact that Battelle admitted as much in its responses to Neff's interrogatories. *Id.* at 1-2, citing Battelle's response to Neff's ninth interrogatory. Roty and Neff also argued that the magistrate's decision "failed to compel the production of the ages and positions of those employees not included in the [reduction in force]." *Id.* at 1.

{¶ 6} Approximately a month and a half later, the trial court overruled Roty and Neff's objections to the magistrate's decision and adopted the decision in its entirety. (Apr. 24, 2015 Entry Adopting Mag. Decision.) Although the trial court stated that it had "undertaken an independent and *de novo* review of the record and arguments," it did not

specifically address any of Roty and Neff's arguments or state any specific reason for adopting the magistrate's decision. (Emphasis sic.) *Id.* After further discovery and motions and briefing by the parties, the trial court granted summary judgment to defendants. (Apr. 5, 2016 Decision & Entry.) The trial court in its decision denied both Roty's and Neff's claims because both had failed to present "direct, circumstantial, or statistical [evidence] to establish that age was a factor in the[ir] termination[s]." *Id.* at 11, 15. In granting summary judgment to Battelle, the trial court also noted that, consistent with a decision from October 1, of 2015,[1] it would not rely on late-filed expert affidavits. *Id.* at 5.

{¶ 7}   Roty and Neff timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 8}   Roty and Neff assign the following errors for our review:

> [1.] THE TRIAL COURT ERRED IN REFUSING TO COMPEL PRODUCTION OF STATISTICAL DATA REGARDING THE REDUCTION IN FORCE IN WHICH PLAINTIFFS WERE TERMINATED.
>
> [2.] THE TRIAL COURT ERRED IN CONCLUDING PLAINTIFFS FAILED TO PROVE THE FOURTH PRONG OF THEIR *PRIMA FACIE* CASES WHEN THEY WERE REPLACED BY AND/OR TREATED LESS FAVORABLY THAN SUBSTANTIALLY YOUNGER INDIVIDUALS.
>
> [3.] THE TRIAL COURT ERRED IN CONCLUDING PLAINTIFFS COULD NOT PROVE THE REDUCTION IN FORCE IN WHICH THEY WERE TERMINATED WAS ADMINISTERED IN A MANNER WHICH WAS A PRETEXT FOR AGE DISCRIMINATION.
>
> [4.] THE TRIAL COURT ERRED IN REFUSING TO CONSIDER THE AFFIDAVITS OF PLAINTIFFS' EXPERTS, DR. WILLIAM NOTZ AND KEMPER CAMPBELL, IN DECIDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

---

[1] The trial court referred to an October 1, 2016 order. We assume this was a typographical error since, at the time the summary judgment decision issued, October 1, 2016 was still in the future.

## III.  DISCUSSION

### A.  First Assignment of Error — Whether the Trial Court Erred in Refusing to Compel Production of Data Regarding the Company-Wide Reduction in Force

{¶ 9}   In their first assignment of error, Roty and Neff argue that the trial court erred in failing to compel the production of statistical data regarding Battelle's 2013 reduction in force.  (Appellants' Brief at 28-38.)  They argue that this error was prejudicial to their case and to their ability to defend against summary judgment because the trial court's decision limiting discovery from Battelle permitted only demographic data for people within a single business unit of the organization who were affected by Battelle's reduction in force.  They argue that this limited discovery was insufficient to permit substantially any comparison between the ages of terminated versus retained employees. *Id.* at 36-38.  Battelle and the other defendants-appellees oppose Roty's and Neff's arguments, pointing out that discovery orders are reviewed on appeal under an abuse of discretion standard.  (Appellees' Brief at 13-14). S*ee, e.g., Evans v. Summit Behavioral Healthcare*, 10th Dist. No. 15AP-241, 2016-Ohio-5857, ¶ 24.  Battelle admits, however, that an appellate court should reverse a discovery decision that "is improvident and affects the discovering party's substantial rights."  (Appellees' Brief at 14, citing *Mauzy v. Kelly Servs.*, 75 Ohio St.3d 578, 592 (1996).)  Notwithstanding, Battelle argues that "[t]here was no showing that data from across the entire business, irrespective of whether it was on the revenue side of Battelle or not, could ever hypothetically demonstrate an intention to target Appellants because of their age."  (Appellees' Brief at 15-16.)  Battelle argues that the trial court's conclusion (from the limited evidence permitted in discovery) that termination decisions were made at the business unit level should be left undisturbed, and, therefore, the statistics sought were not sufficiently relevant to Roty and Neff to be discoverable.  *Id.* at 14-15.

{¶ 10}  " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Evid.R. 401.  "All relevant evidence is admissible," absent certain exceptions not salient here, while "[e]vidence which is not relevant is not admissible."  Evid.R. 402.  That definition of relevance is broad, yet the concept of relevance for purposes of discovery is broader still because discovery may be had

as to "any matter, not privileged, which is relevant to the subject matter involved in the pending action" and "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought *appears reasonably calculated to lead to the discovery of admissible evidence.*" (Emphasis added.) Civ.R. 26(B)(1). In other words, as this Court has previously explained:

> It should be kept in mind that the discovery test for relevancy is much broader than the test to be utilized at trial. It is only irrelevant by the discovery test when the information sought will not reasonably lead to the discovery of admissible evidence.

*Icenhower v. Icenhower*, 10th Dist. No. 75AP-93, 1975 WL 181668, 1975 Ohio App. LEXIS 8452, *3 (Aug. 14, 1975).

{¶ 11} It is apparently undisputed that Roty's and Neff's terminations came, at least ostensibly, as part of a reduction in force. In any reduction in force, qualified employees are let go without cause while other qualified employees will escape dismissal. The mere fact that a competent younger employee remained while a competent older employee was fired cannot, standing alone, show impermissible discrimination in such cases. *Woods v. Capital Univ.*, 10th Dist. No. 09AP-166, 2009-Ohio-5672, ¶ 56. At a trial of this case, plaintiffs would have had to "offer additional direct; circumstantial; or statistical evidence tending to indicate that the employer singled [them] out for impermissible reasons." *Wasserstrom v. Battelle Mem. Inst.*, 10th Dist. No. 15AP-849, 2016-Ohio-7943, ¶ 17; *Dahl v. Battelle Mem. Inst.*, 10th Dist. No. 03AP-1028, 2004-Ohio-3884, ¶ 15. In other words, if statistical analysis produces a significant result, that evidence will necessarily be relevant to a "fact that is of consequence to the determination of the action." Evid.R. 401. Such statistics will either show a disparate impact (in which case they are relevant and helpful to the plaintiffs) or they will not show a disparate impact (in which case they are relevant and helpful to the defense).

{¶ 12} When Roty and Neff sought to obtain such "statistical evidence" as they would need to prove their claims, the trial court declined to compel Battelle to produce it. Instead the trial court limited production of documents in the discovery phase of the litigation to requiring only that Battelle produce age figures for a limited few employees who were affected by the reduction in force. (Feb. 23, 2015 Mag. Decision; Apr. 24, 2015

Entry Adopting Mag. Decision.)  The trial court found this limitation permissible because Battelle presented evidence that the decision to fire Roty, Neff, and all the other terminated employees was made at the business unit level for each individual.  (Feb. 23, 2015 Mag. Decision at 4.)  The trial court did not explain or justify the other arguable limitation of its order, that limiting disclosure to those "included" in the reduction in force might be reasonably interpreted to limit discovery to those persons who were terminated and exclude data about those who were retained.  *Id.* in passim.  In short, Battelle asserted and the trial court agreed, that company-wide statistics were irrelevant to such an extent that they were not even discoverable.  *Id.*

{¶ 13}  But this was not consistent with other undisputed evidence that the reduction in force was part of the company-wide effort to reduce costs by approximately $10 million. (May 7, 2014 Answer at ¶ 10.)  Battelle asserts that each firing decision was made at a business unit level.  Roty and Neff were entitled to test the veracity of that claim by reviewing a statistical analysis of the whole reduction in force, organization-wide.  The trial court denied it the opportunity to do so.  The free flow of relevant discovery allows the parties to litigation to evaluate the quality of their own allegations and defenses.  Often, discovery promotes settlement.  Discovery of relevant information not only promotes fair and just adjudication of parties' claims but also the efficient administration of justice. Access to the data denied to Roty and Neff by the trial court could assist in this pretrial analysis and also could be helpful to a jury in determining whether Battelle engaged in discrimination.  If statistics had shown a significant number of persons fired were over the age of 40, while members of the workforce retained were generally under the age of 40 that would have made the existence of discrimination appear "more probable" and created an issue of fact for trial rather than for disposal by summary judgment.  Evid.R. 401.  If the statistics had showed no age pattern at all, that would have made the possibility of discrimination by Battelle "less probable."  *Id.*  In either case, for the purposes of discovery, such evidence was relevant, but access to it was denied by the trial court.

{¶ 14}  Battelle also admitted that human resources reviewed all proposed terminations (across business units) before they were implemented.  (Feb. 19, 2015 Battelle's Resp. to Neff's First Set of Interrogs. at 7-8; Feb. 19, 2015 Battelle's Resp. to Roty's First Set of Interrogs. at 7-8.)  Battelle admitted that its acting vice president of human

resources played a role in approving employees selected to be part of the reduction in force. (Feb. 19, 2015 Battelle's Resp. to Neff's First Set of Interrogs. at 7-8; Feb. 19, 2015 Battelle's Resp. to Roty's First Set of Interrogs. at 7-8.) And witnesses testified during discovery suggesting there existed a centralized plan that may have targeted older employees. For example, Marcy Unger, acting senior vice president of human resources at Battelle, admitted that human resources provided guidance to each manager making reduction in force decisions about how to approach the decision. (Dec. 4, 2014 Hearing Tr. at 21, 52, filed June 12, 2015.) Roty testified that a human resources person was present at the reduction in force meeting for her group. *Id.* at 79-83. Roty explained that the human resources representative wrote the eldest employee's name in the lowest ranked position before the other persons in the meeting ranked the other 30 potentially affected personnel. *Id.*

{¶ 15} Under these circumstances, where a disparate impact is alleged from a significant company-wide reduction in force, it is likely that statistics, if a significant result is obtained, will be helpful either to the plaintiffs (if there is a pattern of older workers being fired) or to the defense (if there is not). In addition, the trial court was presented with an evidentiary basis for a "reasonabl[e] calculat[ion]" that obtaining statistics regarding the whole reduction in force would have "[led] to the discovery of admissible evidence," in that some witnesses testified in ways that suggested Battelle human resources had guided the reduction in force toward terminating older employees. Civ.R. 26(B)(1).

{¶ 16} Although it was not filed with the trial court at the time it made the discovery decision but in the record on appeal, we also note that material submitted in arguing summary judgment provide support for this view.[2] Neff testified that she heard from her former supervisor that it was his understanding that age was a factor (and even perhaps the primary factor) in the workforce reduction. (Dec. 2, 2014 Neff Dep. at 59-60, filed June 12, 2015) (testifying that her former supervisor told her that the reduction in force was not based on performance but rather "was based on old-timers and salary"). Battelle's human resources director, Staci Palmer, testified at some length during her deposition about a statistical process Battelle had, at times, employed in connection with their legal

---

[2] The Neff and Palmer depositions were not filed with the trial court until after the discovery decision was made. "Appellate review is limited to the record as it existed at the time the trial court rendered its judgment." *Wiltz v. Clark Schaefer Hackett & Co.*, 10th Dist. No. 11AP-64, 2011-Ohio-5616, ¶ 13.

department to ensure that reductions in force did not have a discriminatory bias. (Nov. 14, 2014 Palmer Dep. Excerpt at 4-15, Ex. 9 to Sept. 23, 2015 Memo in Opp. to Summ. Jgmt.) If such a process was employed in the reduction in force at issue in this case, its results would have been relevant. If the process was not utilized, one reasonable inference (though by no means, the only reasonable inference) would have been that Battelle knew that the reduction in force affecting Roty and Neff, if viewed in a broader context, could have appeared to have had a discriminatory bias and thus avoided producing such statistics.

{¶ 17} Here, the trial court essentially decided ex ante what Battelle's organization-wide statistics would show, i.e., that each firing was made at the business unit level and no significant pattern would emerge. Based on this conclusion, the trial court denied Roty and Neff access to these statistics, the trial court finding that any statistics would be irrelevant. In predetermining that the statistics could not be relevant despite evidence and law indicating that they were relevant for the purposes of discovery, the trial court made an "improvident" judgment. *Mauzy* at 592. Thereafter, the trial court made integral this decision on discovery to granting summary judgment to Battelle and against Roty and Neff. The trial court's decision on the parties' discovery dispute "affect[ed] the discovering party's substantial rights." *Id.*[3] Because the trial court's decision denying Roty and Neff discovery of organization-wide statistics was both "improvident" and "affect[ed] the discovering party's substantial rights," the trial court's decision constituted an abuse of discretion and we reverse it. *Id.* Roty and Neff's first assignment of error is sustained.

{¶ 18} The decisions of the trial court on the motion to compel and on the motion for summary judgment (which was decided based on a record without the statistics sought by Roty and Neff), must be reversed and the case remanded so that the trial court can order Battelle to produce company-wide employee age statistics from the period of the relevant reduction in force showing both employees who remained at the company following the reduction in force and those who were terminated pursuant to the reduction in force.

---

[3] We note that that this decision is different from our decision in *Wasserstrom*, because in *Wasserstrom* the plaintiff had failed to procure a transcript of the evidence upon which the trial court relied. *Wasserstrom* at ¶ 37-38. Thus, in *Wasserstrom*, we assumed the validity of the proceedings and affirmed the discovery decision of the trial court on that basis. *Id.*

## B. Second, Third, and Fourth Assignments of Error – Moot

{¶ 19} Having sustained Roty and Neff's first assignment of error, questions about whether summary judgment was properly decided or whether expert testimony should have been considered are now moot. The trial court will again have the opportunity to consider such matters on remand with statistical data this time being produced as part of discovery.

{¶ 20} Having sustained Roty and Neff's first assignment of error, their second, third, and fourth assignments of error are moot and are considered no further.

## IV.  CONCLUSION

{¶ 21} In this case, where a disparate impact claim was alleged in regard to a company-wide reduction in force, the circumstances and evidence before the trial court provided a basis for a reasonable calculation that statistical analysis was likely to lead to relevant evidence. That is, such statistics will likely either show a disparate impact (in which case they will be helpful to the plaintiffs) or they will not (in which case they will be helpful to the defense). In either event, they are discoverable. We therefore sustain Roty and Neff's first assignment of error. Their remaining three assignments of error are moot because we have sustained the first assignment of error. It is the judgment of this Court that the judgment of the Franklin County Court of Common Pleas is reversed and cause remanded.

*Judgment reversed;*
*cause remanded.*

HORTON, J., concurs.
LUPER SCHUSTER, J. dissents.

LUPER SCHUSTER, J., dissenting.

{¶ 22} Because I would affirm the judgment of the trial court, I respectfully dissent.

{¶ 23} In their first assignment of error, Roty and Neff argue that the trial court erred in not compelling the production of company-wide statistical data regarding Battelle's August and September 2013 reduction in force. The majority finds that the trial court abused its discretion in denying Roty and Neff access to these statistics. I disagree.

{¶ 24} According to Roty and Neff, Battelle's August and September 2013 reduction in force had a statistically significant, disproportionate effect on older employees, and the

termination decisions were centrally approved by Battelle's human resources personnel. However, based on the evidence presented at the December 2014 hearing, the trial court magistrate concluded that each termination decision in that reduction in force was made at the business unit level. The magistrate found that each business unit manager developed a plan and made an independent decision regarding which employees to terminate. Consequently, the magistrate concluded that Roty and Neff were only entitled to discovery regarding the birthdates and position titles for each employee in their business unit included in the August and September 2013 reduction in force. The magistrate thus denied Roty and Neff's request to compel Battelle to provide statistical data reaching across all of Battelle's business units. Roty and Neff objected to the magistrate's denial of the request, and the trial court overruled their objections and adopted the magistrate's decision in its entirety.

{¶ 25} The record supports the trial court's decision to deny Roty and Neff's request to compel the production of company-wide age and position data. Testimony at the December 4, 2014 hearing indicated that Battelle's August and September 2013 reduction in force employment termination decisions were made at the individual business unit level, not the result of centralized decision-making. Marcy Ungar, Battelle's senior vice president of human resources, testified that Battelle's human resources personnel helped facilitate the reduction in force process in August and September 2013, providing advice and counsel to executive committee members. However, Ungar also testified that the reduction in force decision-making process was made separately within each of Battelle's business units. According to Ungar's testimony, each business unit manager decided whose employment would be terminated, and that manager was required to prepare a justification for the termination decision.

{¶ 26} In my view, because evidence supported the trial court's finding that the principal decision-maker of each of Battelle's business units decided which employees to terminate as part of its August and September 2013 reduction in force, the trial court did not abuse its discretion in denying Roty and Neff's motion to compel company-wide statistics. I agree with the majority that there was testimony that Battelle's human resources department was involved in the August and September 2013 reduction in force terminations. But, contrary to the majority's suggestion, the evidence showed that the

involvement was minimal or nonexistent as it related to deciding who would be terminated. I also disagree with the majority's reasoning that company-wide statistics could refute the evidence that termination decisions were primarily made at the business unit level. Similarly, I reject the majority's implicit findings that company-wide statistical data could constitute evidence that the principal decision-maker within Roty and Neff's business unit discriminated against them because of their age and that such data could also show that the termination decisions were influenced by the discriminatory animus of Battelle management outside their business unit. Because I find the trial court did not abuse its discretion in overruling Roty and Neff's motion to compel, I would overrule their first assignment of error.

{¶ 27} Roty and Neff's second assignment of error asserts that the trial court erred in concluding they failed to submit evidence establishing the fourth prong of their prima facie age discrimination claims. In reduction in force cases, the fourth prong of the prima facie test "is modified to require the employee to offer additional direct; circumstantial; or statistical evidence tending to indicate that the employer singled him out for impermissible reasons." (Internal quotations omitted.) *Wasserstrom v. Battelle Mem. Inst.*, 10th Dist. No. 15AP-849, 2016-Ohio-7943, ¶ 17. Because Roty and Neff failed to present additional direct, circumstantial, or statistical evidence to establish age discrimination, their second assignment of error is without merit. Thus, I would overrule their second assignment of error.

{¶ 28} In their third assignment of error, Roty and Neff argue the trial court erred in concluding that they failed to meet their burden of demonstrating that the legitimate, non-discriminatory reason for their terminations was actually pretext for age discrimination. However, pursuant to the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) analytical framework, because Roty and Neff did not meet their burden of presenting prima facie cases of age discrimination, it was unnecessary for appellees to present a legitimate, non-discriminatory reason for the terminations. For this reason, my disposition of Roty and Neff's second assignment of error would render moot their third assignment of error.

{¶ 29} Lastly, in their fourth assignment of error, Roty and Neff contend the trial court erred in not considering the affidavits of their experts, Kemper Campbell and William

Notz, Ph.D., in deciding appellees' motion for summary judgment. Based on my review of the record, I would find the trial court did not abuse its discretion in excluding Campbell's affidavit. Before submitting Campbell's affidavit in opposition to appellees' motion for summary judgment, Roty and Neff had represented to the trial court that Campbell's testimony would not be used at the summary judgment stage. As to Dr. Notz's affidavit, it appears the trial court mistakenly excluded his affidavit from consideration in ruling on appellees' motion for summary judgment. However, any error the trial court committed by not considering Dr. Notz's affidavit was not prejudicial to Roty and Neff because his statements that they cited regarding the absence of statistically significant data would not have satisfied Roty and Neff's evidentiary obligation as to the fourth prong of their prima facie age discrimination cases. Thus, I would overrule Roty and Neff's fourth assignment of error.

{¶ 30} Accordingly, I respectfully dissent.

_____