OPINION
{¶ 1} Plaintiff-appellant, Alan R. Dahl, appeals from a judgment of the Franklin County Court of Common Pleas in favor of his former employer, defendant-appellee, Battelle Memorial Institute, in appellant's action for wrongful termination.
 {¶ 2} Appellant holds a Bachelor's degree in chemistry from Princeton University, a Masters degree in organic chemistry from the University of Colorado, and a Ph.D. in inorganic chemistry from the University of Colorado. Prior to working for Battelle, appellant was employed for 21 years at the Lovelace Respiratory Research Institute in New Mexico. Battelle is an Ohio non-profit corporation principally involved in providing research and development services for business and government. Appellant came to Battelle on September 8, 1998, as Director of Pulmonary Technology.
 {¶ 3} Appellant was initially brought to Battelle to supervise the development and marketing of a newly-developed pulmonary inhalation device. Over the next four years, appellant held several different positions with Battelle, being reassigned due to abandonment of his initial program and a series of successive changes in research emphasis by Battelle. Some of these shifts appear to relate to an overall restructuring or change in direction at Battelle, which was undergoing a change in top management. Appellant's last post with Battelle was in the Commercialization Group, where his primary responsibility was to develop commercial enterprises such as licensing capital for programs within the pharmaceutical industry. He eventually became part of a subgroup within the Commercialization Group, the Biomedical Therapeutic Group. Appellant was ultimately terminated by Battelle on August 31, 2002, as part of a wider reduction-in-force ("RIF") involving 15 employees. At the time of his termination, appellant was 58 years old.
 {¶ 4} Appellant filed his complaint in the Franklin County Court of Common Pleas alleging wrongful termination on the basis of age, and also asserting a separate claim of promissory estoppel alleging that he had been given assurances of continued employment, that he had relied on these assurances, and that his ultimate termination violated these assurances.
 {¶ 5} Battelle moved for summary judgment in the trial court, supporting the motion primarily with references to appellant's own deposition, the employment contract attached as an exhibit thereto, and a small number of internal memoranda including appellant's notice of termination.
 {¶ 6} Appellant responded with a memo in opposition to summary judgment also referring to statements in his own deposition, and an additional affidavit summarizing appellant's statistical interpretation of hiring and termination patterns at Battelle between 1998 and 2002, broken down by employee age. These statistics were drawn from Battelle's own personnel records obtained through discovery. Appellant also relied upon affidavits provided by other former Battelle employees.
 {¶ 7} The trial court granted summary judgment for Battelle, finding that there remained no material issue of fact because appellant had presented insufficient evidence to either directly show that Battelle was motivated by age-discriminatory intent in his termination, or indirectly show such intent through the four-part analysis set forth in Barker v. Scovill, Inc. (1983),6 Ohio St.3d 146, and McDonnell Douglas Corp. v. Green (1973),411 U.S. 792, 93 S.Ct. 1817. The court also found that appellant had failed to present evidence sufficient to show the existence of a material issue of fact on his promissory estoppel claim because his employment with Battelle was governed by a written contract of employment, which provided by its own express terms that his employment was at-will and that the terms of employment would not be modified other than in writing by an officer of Battelle.
 {¶ 8} Appellant has timely appealed from the trial court's judgment and brings the following assignments of error:
I. The trial court erred in granting summary judgment in favor of defendant battelle on plaintiff's claim for age discrimination.
II. The trial court erred in granting summary judgment in favor of defendant battelle on plaintiff's claim for promissory estoppel.
 {¶ 9} Preliminarily we note that Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. Tokles Son, Inc. v. MidwesternIndemn. Co. (1992), 65 Ohio St.3d 621, 629, citing Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id.
 {¶ 10} An appellate court's review of summary judgment is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994),94 Ohio App.3d 579, 588; Patsy Bard v. Society National Bank, nka KeyBank
(Sept. 10, 1998), Franklin App. No. 97APE11-1497. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. Jones v. Shelly Co. (1995),106 Ohio App.3d 440, 445. As such, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds. Patsy Bard v. Society National Bank, nkaKeyBank (Sept. 10, 1998), Franklin App. No. 97APE11-1497.
 {¶ 11} The age discrimination claim addressed in appellant's first assignment of error is brought under R.C. 4112.02, which makes it unlawful for an employer to discharge without just cause or otherwise discriminate against a person on the basis of age. R.C. 4112.14(A) defines the protected class as "any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."
 {¶ 12} Unlawful discriminatory motives on the part of an employer in undertaking an adverse employment action against an employee may be proven either directly or indirectly. Gismondiv. MT Mortgage Corp. (Apr. 13, 1999), Franklin App. No. 98AP-584. Under the direct method of proving discrimination, a plaintiff may present circumstantial, statistical, and direct evidence from which the finder of fact could conclude that purposeful and unlawful discrimination occurred. Kohmescher v.Kroger Co. (1991), 61 Ohio St.3d 501; U.S. Postal Service Bd.of Governors v. Aikens (1983), 460 U.S. 711, 717,103 S.Ct. 1478.
 {¶ 13} The direct method of proving discrimination "is generally hard to come by, for it is the rare discriminator that leaves its tracks uncovered." Olive v. Columbia/HCA HealthCareCorp. (Mar. 9, 2000), Cuyahoga App. No. 75249; see, also, Goadv. Sterling Commerce, Inc. (June 13, 2000), Franklin App. No. 99AP-321. To overcome this inherent difficulty and allow potentially meritorious discrimination actions to proceed, the United States and Ohio Supreme Courts have established a framework under which the plaintiff may indirectly establish his case by fulfilling a four-part test:
In order to establish a prima facie case of age discrimination * * * in an employment discharge action, plaintiff-employee must demonstrate (1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class.
Barker, at paragraph one of the syllabus, adopting the standard set forth in McDonnell Douglas, 411 U.S. 792,93 S.Ct. 817.[1]
 {¶ 13} R.C. 4112.02 makes it unlawful for an employer to discharge without just cause or otherwise discriminate against a person with respect to any matter related to employment on the basis of age. R.C. 4112.14 specifically prohibits an employer from discriminating against a job applicant or discharging without just cause any employee aged 40 or older who is physically able to perform the duties and otherwise meets the established requirements of the job.
 {¶ 14} Once a plaintiff-employee has established a prima facie case under the indirect method set forth in Barker, the employer may then overcome the presumption arising from the establishment of this prima facie case by setting forth a legitimate, nondiscriminatory reason for the plaintiff's discharge. Barker, at paragraph one of the syllabus;Kohmescher, at 503-504. Once the employer presents evidence to rebut the prima facie case under the Barker method, the burden shifts back to the plaintiff to demonstrate the employer's stated reasons for the job action were merely a pretext for unlawful discrimination.
 {¶ 15} The present case involves an RIF, which necessarily requires modification of the indirect method of proof and establishing a prima facie case by modifying the fourth element under Barker and McDonnell Douglas: in cases of termination due to economic necessity, an age discrimination plaintiff carries a greater burden of supporting allegations of discrimination by coming forward with additional evidence, be it direct, circumstantial, or statistical, to establish that age was a factor in the termination. Inman v. Champion InternationalCorp. (Aug. 5, 1991), Butler App. No. CA90-08-161; Williams v.Emco Maier Corp. (S.D.Ohio 2002), 212 F. Supp.2d 780, 784 (in RIF cases plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons").
 {¶ 16} In the present case, Battelle's hiring and firing statistics introduced by appellant in opposition to summary judgment are contended by appellant to constitute sufficient evidence to raise a material issue of fact both if he is proceeding under the direct method of proving discrimination or the indirect method under Barker and McDonnell Douglas. There is no dispute that, with respect to the prima facie case underBarker, appellant has met the first three elements: appellant was 58 years old, suffered an adverse employment decision in the form of termination, and was qualified for any of the positions he formerly held. It is the fourth element of Barker, as modified by Coryell and adapted to an RIF case, that is at issue.
 {¶ 17} We agree with the trial court that the employment statistics presented by appellant were insufficient under either the direct or indirect method of showing discrimination to avert summary judgment. Plaintiff's statistics examined prior RIF's undertaken at Battelle. In the 2000 RIF, four individuals were terminated, all over age 40. In the 2001 RIF, one individual was terminated and she was over 40. In the 2002 RIF, which included appellant, 15 individuals were terminated and 12 of the 15 were over 40. Summing up overall employment transitions at Battelle from 1998 to 2002 in appellant's division, 40 of 60 employees hired into the division were under age 40. The general employee population at Battelle was roughly evenly divided between persons under and over the age of 40. Based upon the statistical makeup of the overall employee population, appellant contends that the proportion of younger hires and the proportion of the older persons terminated in RIFs establishes a statistical divergence sufficient to support a pattern of unlawful discrimination based upon age through termination and hiring.
 {¶ 18} We agree with the trial court, however, that the raw statistics presented by appellant simply do not present a sufficient level of specificity to support the inference of discrimination. Appellant's statistics do not account for variations among employees in skill level, job function, and education as variables that necessarily must be accounted for in establishing a probative value of the raw numbers given. The case before us is similar in many respects to that in Swiggum v.Ameritec Corp. (Sept. 30, 1999), Franklin App. No. 98AP-1031, in which this court held that such unelaborated statistics were insufficient to establish a material issue of fact either under the direct method of proving discrimination or a prima facie case in the indirect method because they "failed to take into consideration any independent variables that might explain the association between age and termination rates, including job skills, education, experience, performance or self-selection." In our case, the only specific evidence regarding individuals retained and their qualifications was that provided by appellant regarding an employee, Prabo Wijetunge, whom appellant described as working under appellant, not in an equivalent position, and being retained after the reduction in force. Because Wijetunge was not similarly situated with appellant, even this sole example of comparable employee treatment is insufficient evidence to oppose summary judgment under either the direct or indirect method of proving discrimination.
 {¶ 19} Because we find that the trial court did not err in finding that appellant had presented insufficient evidence in opposition to summary judgment to demonstrate that there remained a material issue of fact to resolve at trial, we find that the trial court did not err in granting summary judgment for appellee on appellant's age discrimination claim. Appellant's first assignment of error is, accordingly, overruled.
 {¶ 20} Appellant's second assignment of error asserts that the trial court erred in granting summary judgment on his claim of promissory estoppel. Appellant bases his claim on Mers v.Dispatch Printing Co. (1985), 19 Ohio St.3d 100, in which the Supreme Court of Ohio established an exception to the employment-at-will doctrine which generally prevails in Ohio and under which courts will refrain from interfering in an otherwise lawful decision by an employer to terminate an employee. InMers, the Supreme Court held that verbal assurances of continued employment which should reasonably have been expected by the employer to induce action or forbearance on the part of the employee, and did in fact induce such action or forbearance, will be held as binding promises of future employment if injustice can only be avoided by enforcement of the promise. Id. at 104. See, also, Helmick v. Cincinnati Word Processing, Inc.
(1989), 45 Ohio St.3d 131, 136 ("a demonstration of detrimental reliance on specific promises of job security can create an exception to the employment-at-will doctrine").
 {¶ 21} Appellee argues that promissory estoppel is inapplicable in the present case because appellant was employed by Battelle under a written, rather than oral, employment agreement which specifically provided that the employment relationship was at-will, and that the agreement could not be modified except in writing by an officer of Battelle. Appellee asserts that the exception created in Mers does not apply to written employment agreements. Appellee also argues that the assurances of continued employment in question were either not intended as such or were so vague and ambiguous as to constitute mere estimates or uncertain predictions of the future course of Battelle's business, upon which appellant could not reasonably have relied. Because we find that the latter ground suffices to dispose of appellant's claim under summary judgment, we specifically decline to address the issue raised in the former, i.e., whether Mers applies only to oral employment agreements or also applies to written employment agreement such as that entered into by appellant and Battelle.
 {¶ 22} By means of deposition and affidavit, appellant presented the following statements by Battelle representatives or supervisors to substantiate his argument that he had been definitely promised employment. Because after his arrival appellant had transferred into the Commercialization Group, and then into the Biomedical Therapeutics Group, the repeated redefinition of his job duties prompted appellant to ask Charles Burdick, his immediate supervisor, whether there were any time or budget constraints on appellant's new group's projects. Burdick reassured appellant that there were no such time or budget constraints. Other attendees from the group at the same meeting recalled similar assurances and appellant has presented their testimony to that effect by affidavit in the present case. Appellant also testified that in a meeting with the Commercialization Group headed by Richard Rosen, a division president of Battelle, Rosen pointed out that financial issues had arisen but that there was no intention of letting personnel go. Appellant also testified that, in the summer of 2001, he became aware of rumors that the Commercialization Group would be cut or reduced. Appellant continued to believe that his sub-group, the Biomedical Therapeutics Group, would not be affected by the potential cuts because of Rosen and Burdick's prior assurances and appellant's knowledge that Battelle's new chief executive, Carl Kohrt, favored the Biomedical Therapeutics Group. Based on this belief, appellant turned down numerous other offers of employment to remain at Battelle.
 {¶ 23} Routine congratulatory or otherwise vaguely positive employer statements regarding future business and career prospects do not give rise to a promissory estoppel claim.Helmick, at 136; Condon v. Body, Vickers and Daniels (1994),99 Ohio App.3d 12; Snyder v. AG Trucking, Inc. (C.A. 6, 1995),57 F.3d 484, 489. We find that the assurances relied upon by appellant were precisely the sort of vague projections of future business direction that cannot constitute the basis for promissory estoppel in the employment context. Appellant has not offered any evidence of clear and unambiguous promises of job security for appellant specifically, and appellant relies only on Battelle's best estimates as to the future of appellant's division. In effect, appellant appears to rely on appellant's own nebulous beliefs as to the new chief executive's support for the Biomedical Therapeutics Group and future funding. We accordingly find that the assurances cited by appellant regarding his future employment with Battelle were insufficient to generate reasonable reliance on his part, and that Mers therefor does not support a promissory estoppel claim in this case. Appellant's second assignment of error is, accordingly, overruled.
 {¶ 24} In accordance with the foregoing, we find that the trial court did not err in granting summary judgment for Battelle on appellant's age discrimination and promissory estoppel claims for wrongful termination. Appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas granting summary judgment for appellee is affirmed.
Judgment affirmed.
 Petree and Klatt, JJ., concur.
[1] The United States Supreme Court somewhat departed from theMcDonnell Douglas standard in O'Connor v. Consolidated CoinCaterers Corp. (1996), 517 U.S. 308, 116 S.Ct. 1307, in which the court rejected the requirement under McDonnell Douglas that a plaintiff alleged that he was replaced by someone outside the age group specifically protected by the applicable state or federal anti-discrimination statute. The United States Supreme Court held that "because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than the fact that the plaintiff was replaced by someone outside the protected class." Id. at 313. Despite the decision in O'Connor, a number of Ohio appellate courts including this court continued to apply the four-part test as set forth in Barker. See, e.g., Smith v.E.G. Baldwin Associates, Inc. (1997), 119 Ohio App.3d 410,414; Cruise v. S. Dayton Neurological Associates, Inc. (1997),121 Ohio App.3d 655, 659; Krause v. Young Men's Christian Ass'n
(Dec. 10, 1998), Cuyahoga App. No. 73828. Ohio's continued adherence to Barker and the former standard was acknowledged by its federal courts. Pasko v. American National Can Co.
(N.D.Ohio 1998), 998 F. Supp. 807, 811. Only after the trial court decision was rendered and appellate briefs filed in the present case did the Ohio Supreme Court decide Coryell v. Bank One TrustCo. N.A., 101 Ohio St.3d 175, 2004-Ohio-723, adopting the modified test of O'Connor and modifying the syllabus ofKohmescher. Because the differences are not material on the present facts we will decide the case, as the trial court did, with reference to Barker and Kohmescher, which remain for our purposes here good law.