[Cite as *Jelinek v. Abbott Laboratories*, 2019-Ohio-3860.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| David A. Jelinek, | : | |
| Plaintiff-Appellant, | : | |
| v. | | |
| | : | No. 17AP-576 |
| | | (C.P.C. No. 99CVH-7505) |
| Abbott Laboratories, | : | |
| Ross Products Division, | | (REGULAR CALENDAR) |
| c/o CT Corporation | : | |
| Registered Agent et al., | | |
| | : | |
| Defendants-Appellees. | | |
| | : | |

---

D E C I S I O N

Rendered on September 24, 2019

---

**On brief**: *Law Offices of Russell A. Kelm, Russell A. Kelm,* and *Ian M. King,* for appellant. **Argued**: *Russell A. Kelm.*

**On brief**: *Kirkland & Ellis LLP, James F. Hurst, Christa C. Cottrell,* and *Rebecca Fitzpatrick* pro hac vice; *Vorys, Sater, Seymour and Pease LLP,* and *Lisa Pierce Reisz,* for appellee Abbott Laboratories. **Argued**: *Christa C. Cottrell.*

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by plaintiff-appellant, David A. Jelinek, from a final judgment entered by the Franklin County Court of Common Pleas following a jury verdict in favor or defendant-appellee, Abbott Laboratories, Ross Products Division ("Abbott"), on appellant's claim for age discrimination.

{¶ 2}   This matter has a lengthy procedural history.   On September 10, 1999, appellant refiled a complaint in the common pleas court against Abbott, Joy A. Amundson, Thomas M. McNally, William H. Stadtlander, Karl V. Insani, Gregory A. Lindberg, and James L. Sipes.   Appellant is a former employee of Abbott, and the individual defendants were either current or former employees of Abbott.   The complaint alleged causes of action for promissory estoppel, age discrimination, retaliation, violation of public policy, and spoliation of evidence.

{¶ 3}   By entry filed May 9, 2000, the trial court dismissed the promissory estoppel claims against the individual defendants and struck the spoliation of evidence claim.   Abbott and the individual defendants subsequently filed a motion for summary judgment.   By decision rendered January 23, 2001, the trial court granted summary judgment in favor of Abbott and the individual defendants as to the remaining claims.

{¶ 4}   Appellant appealed the trial court's grant of summary judgment.   In *Jelinek v. Abbott Laboratories*, 10th Dist. No. 01AP-217 (Sept. 13, 2001) ("*Jelinek I*"), this court affirmed the trial court's grant of summary judgment as to appellant's claim for retaliation/wrongful discharge, but reversed and remanded the matter as to claims for age discrimination, promissory estoppel, and constructive discharge.

{¶ 5}   The matter came for trial before a jury beginning April 8, 2002.   During the course of the trial, the trial court granted directed verdict motions in favor of defendants Joy A. Amundson (individually "Amundson") and James L. Sipes (individually "Sipes"). Following a three-week trial, the jury returned a verdict in favor of appellant and against Abbott and two individual defendants, Karl V. Insani (individually "Insani") and Gregory A. Lindberg (individually "Lindberg"), as to appellant's claim for age discrimination, awarding appellant $700,000 in compensatory damages and $25,000,000 in punitive damages, as well as attorney fees.   *See Jelinek v. Abbott Laboratories*, 164 Ohio App.3d 607, 2005-Ohio-5696, ¶ 23 (10th Dist.) ("*Jelinek II*").   The jury found in favor of defendants on appellant's claims of promissory estoppel and constructive discharge.   The jury also found defendants William H. Stadtlander (individually "Stadtlander") and Thomas M. McNally (individually "McNally") did not discriminate against appellant by transferring him to Lake County, Indiana because of his age.

{¶ 6} On June 7, 2002, Abbott filed a motion for judgment notwithstanding the verdict ("JNOV"), for a new trial or, in the alternative, for remittitur. On May 20, 2003, the trial court ruled on the motion for JNOV, finding the award for compensatory damages was excessive, and that it should be reduced to an award of $100,000. The court also found the award of punitive damages to be excessive, and provided for a remittitur which would reduce the award to $4,000,000. *See Jelinek II* at ¶ 26. On June 23, 2003, the trial court entered judgment in favor of Abbott on appellant's claim for promissory estoppel, and entered judgment in favor of Abbott, Insani, and Lindberg on appellant's claim for constructive discharge. The trial court also entered JNOV in favor of defendants on appellant's age discrimination claim and, in the event the JNOV was reversed on appeal, granted a new trial on the issue of age discrimination.

{¶ 7} Appellant filed an appeal from the judgment of the trial court. In *Jelinek II,* this court held the trial court erred in granting defendants' motion for JNOV as to appellant's age discrimination claim, but further held the court did not abuse its discretion in conditionally granting a new trial on the age discrimination claim against Abbott, Insani, and Lindberg. This court also made a determination that the jury found appellant failed to prove constructive discharge. The matter was therefore remanded to the trial court for further proceedings.

{¶ 8} On February 4, 2008, the case came for retrial before a jury. Following opening statements, counsel for defendants filed a motion for mistrial based on comments made by counsel for appellant during opening statements. By entry filed February 5, 2008, the trial court granted the motion for mistrial.

{¶ 9} The matter came for retrial beginning September 12, 2011. At the close of appellant's case-in-chief, the trial court granted defendants' motion for directed verdict on appellant's age discrimination claim against Lindberg, and also granted defendants' motion for directed verdict on appellant's claim for punitive damages. Following deliberations, the jury returned a unanimous verdict in favor of Abbott and Insani on appellant's claim for age discrimination.

{¶ 10} Appellant appealed the jury verdict. In *Jelinek v. Abbott Laboratories*, 10th Dist. No. 11AP-996, 2013-Ohio-1675 ("*Jelinek III*"), this court found the trial court erred in excluding evidence of the quality of a sales territory offered to appellant, and that such

exclusion affected appellant's substantial rights. This court also held the trial court erred in excluding, under Evid.R. 801(D)(2)(a), the statement of a party opponent. We therefore reversed and remanded the matter for a new trial.

{¶ 11} The matter was again tried before a jury beginning May 22, 2017. On June 7, 2017, the jury returned a verdict in favor of Abbott and against appellant on the issue of age discrimination, including a finding that appellant did not prove Abbott intentionally discriminated against him by offering him a transfer to territory in Lake County, Indiana. On July 11, 2017, the trial court filed a final judgment entry in favor of Abbott.

{¶ 12} On appeal, appellant sets forth the following three assignments of error for this court's review:

> Assignment of Error No. 1: THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO COMPEL DEFENDANT-APPELLEE TO PRODUCE ACCURATE STATISTICAL EVIDENCE OF THE COMPANY-WIDE REDUCTION IN FORCE, AND BY EXCLUDING ANY AND ALL [STATISTICAL] EVIDENCE AT TRIAL.
>
> Assignment of Error No. 2: THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING DEFENDANT-APPELLEE'S MOTION *in limine* AND EXCLUDING CIRCUMSTANTIAL EVIDENCE OF AGE DISCRIMINATION AND PRETEXT.
>
> Assignment of Error No. 3: THE TRIAL COURT ERRED BY AWARDING COSTS TO DEFENDANT-APPELLEE, BUT REFUSING TO SIMILARLY AWARD COSTS TO PLAINTIFF-APPELLANT.

{¶ 13} Appellant's first and second assignments of error are interrelated and will be addressed together. Under these assignments of error, appellant asserts the trial court erred by: (1) failing to compel Abbott to provide accurate statistical evidence of the company-wide reduction in force ("RIF") in 1997, (2) excluding all statistical evidence at trial, and (3) granting Abbott's motion in limine and excluding circumstantial evidence at trial to show age discrimination.

{¶ 14} We first address appellant's assertion the trial court erred by failing to compel appellee to provide "accurate" statistical evidence of the 1997 RIF. (Appellant's

Brief at 22.)   By way of background, appellant, who was born May 15, 1942, worked in various sales positions with Abbott over an approximately 30-year period.  In early 1997, Abbott created a new sales position, primary care district manager ("PCDM"), and appellant became one of seven PCDMs nationwide.   Later that same year, Abbott underwent a RIF, affecting over 200 employees.

{¶ 15} In October 1997, Abbott made the decision to eliminate all seven of the recently created PCDM positions.  At the time, Abbott offered appellant (who had been based in Columbus, Ohio) a position in a territory known as Lake County, Indiana, which included Gary, Indiana.  Appellant accepted the position, but only worked at the Indiana territory for approximately one week.  Appellant retired from Abbott, effective April 1, 1998, at age 55.

{¶ 16}  At trial, appellant's theory of the case, as outlined by his counsel in opening statements, was that Abbott's offer of a position in Gary, Indiana, following elimination of the PCDM positions, was pretext for age discrimination, i.e., counsel argued the offer was made by Abbott with the knowledge appellant would not accept the position because it was an unfavorable sales territory.   More specifically, counsel argued (and appellant subsequently testified) that the territory in Indiana had been "collapsed," meaning "no one is effectively serving it, and they disperse the sales accounts to the surrounding salesman." (Tr. Vol. II at 416.)  By contrast, witnesses for Abbott testified that the Indiana territory was not collapsed and that appellant was offered the position in Indiana because there were no sales positions available in Columbus, Ohio, following the 1997 RIF and the elimination of all seven PCDM positions.

{¶ 17} Appellant argues on appeal that Abbott, over the years of litigation in this matter, has changed its position as to whether the PCDM position he held was part of the 1997 RIF.  Appellant maintains that Abbott, from the start of litigation, repeatedly refused to provide discovery evidence regarding the RIF.  Appellant contends that counsel for Abbott, during the 2002 trial, stated Abbott would never contend appellant was included in the RIF.  Further, on the eve of the 2011 trial, appellant requested statistics and other discovery relating to the RIF based on the suspicion Abbott planned to claim appellant was included in the RIF.

{¶ 18} On appeal, appellant challenges a discovery ruling issued by the trial court prior to the most recent trial. Appellant concedes, as he did at trial, that Abbott's decision to eliminate the PCDM positions (including his position) was not discriminatory. He maintains, however, that the RIF as a whole was implemented in a discriminatory manner.

{¶ 19} In response, Abbott argues that the bulk of appellant's argument on appeal discusses discovery rulings that preceded the previous trials rather than the trial court's discovery ruling in the most recent trial. Abbott notes that, unlike discovery rulings in the earlier trials, which denied appellant's motions to compel, the trial court in the latest proceeding granted appellant's motion to compel discovery relating to the 1997 RIF. Abbott further contends it produced the requested information, and that appellant never claimed the production was incomplete or insufficient. Finally, Abbott argues appellant did not proffer the evidence he claims was properly excluded, nor does he now cite a single document, witness, or line of testimony that he would have presented had the trial court ruled differently.

{¶ 20} A trial court "has broad discretion in regulating the discovery process." *Zimpfer v. Roach*, 3d Dist. No. 17-17-03, 2017-Ohio-8437, ¶ 27. This court reviews a trial court's resolution of discovery matters "under an abuse of discretion standard." *Bennett v. Martin*, 10th Dist. No. 13AP-99, 2013-Ohio-5445, ¶ 36.

{¶ 21} We begin with a review of appellant's motion to compel, filed September 5, 2014. In that motion, appellant requested the trial court "compel defendant to produce discovery requested by plaintiff relating to the 1997 reduction in force." Appellant argued he was entitled to information that would allow him to run statistical analyses regarding the ages of workers who lost their jobs in the 1997 RIF. Appellant's memorandum in support, citing "the early days of the pendency" of appellant's claims, set forth nine bullet points which, he argued, involved objections by Abbott to discovery requests involving the 1997 RIF. On September 22, 2014, Abbott filed a memorandum in opposition to appellant's motion to compel.

{¶ 22} On November 26, 2014, the trial court issued its decision and entry granting in part appellant's motion to compel discovery relating to the 1997 RIF. In its decision, the trial court initially addressed appellant's motion to compel, stating in part:

"[Appellant] bulleted nine issues addressing at least 15 specific requests, which were contained in at least two overarching requests for production. These requests are impossible to follow out of context and largely fail to demonstrate their individual relevance." (Nov. 26, 2014 Decision at 4.) The trial court noted direction provided by this court, as set forth in *Jelinek III*, regarding issues on remand. Specifically, the trial court observed: "The Tenth District strongly suggested that a statistical analysis of the RIF would be useful *if* 'the methodology and the explanatory power of the statistical analysis [is] sufficient to permit an inference of discrimination.' " (Emphasis sic.) (Nov. 26, 2014 Decision at 2-3).

{¶ 23} In granting in part appellant's motion to compel, the trial court ordered Abbott to "produce information including the names, ages, qualifications, full-time or part-time status, and salaries of those subject to the 1997 RIF," and further ordered Abbott to "provide identical information for those workers retained by the Ross division after the RIF." (Nov. 26, 2014 Decision at 5.) The trial court also held appellant "must then identify any expert and provide the expert's report no fewer than 90 days prior to trial," and that Abbott "must then identify any expert and provide the expert's report no fewer than 60 days prior to trial." (Nov. 26, 2014 Decision at 5.)

{¶ 24} On January 8, 2015, the trial court set a discovery cutoff date of April 1, 2015. On April 1, 2015, appellant filed a motion for extension of discovery cutoff. In the motion, appellant requested the court to move the discovery cutoff date to September 1, 2015 on the basis that the trial date had been moved from June 8 to November 8, 2015. Abbott filed a memorandum in opposition to appellant's motion for extension of discovery cutoff. In its memorandum, Abbott argued it had "provided the discovery it was ordered to produce per the Court's November 26, 2014 decision on Plaintiff's Motion to Compel Discovery Relating to the 1997 Reduction in Force on January 12, 2015." (Defs' Memo in Opposition at 1.) By entry and decision filed April 27, 2015, the trial court denied "a general extension of discovery at this time." (Apr. 27, 2015 Entry & Decision.) The court's entry further provided: "Plaintiff and Defendant are welcome to petition the Court for the extension of a limited discovery period, so long as parties expand on what additional discovery is necessary for trial." (Apr. 27, 2015 Entry & Decision.)

{¶ 25} On appeal, appellant acknowledges the trial court ordered discovery as to the 1997 RIF, but argues the court erred in denying additional discovery necessary for statistical analysis. However, as noted by Abbott, while appellant asserts the trial court erred by not ordering Abbott to produce even more information about the RIF, appellant does not identify any additional discovery that was denied or explain why the information the trial court ordered Abbott to produce was insufficient. Nor does appellant dispute Abbott produced the information the trial court deemed to be discoverable in its decision and entry of November 26, 2014.

{¶ 26} Appellant also claims that "[f]urther discovery on this matter was denied by the trial court" in its April 27, 2015 entry ruling on appellant's motion for an extension of discovery cutoff. (Appellant's Brief at 31.) However, while the trial court's entry denied appellant's request for a general extension of discovery, the court further held, as cited above, the parties were "welcome to petition the Court for the extension of a limited discovery period, so long as parties expand on what additional discovery is necessary for trial." The record fails to indicate that appellant petitioned the court for additional supplemental discovery with respect to statistical evidence. In light of the record presented, and where the trial court ordered significant discovery as to the 1997 RIF (which Abbott produced), we find no abuse of discretion.

{¶ 27} Appellant next contends the trial court erred by excluding all statistical evidence at trial. Appellant asserts the trial court's decision to exclude the statistical evidence was based on an erroneous interpretation of this court's decision in *Jelinek III*.

{¶ 28} In *Jelinek III,* one of the issues addressed by this court, under appellant's third assignment of error, involved the trial court's decision in the 2011 trial to exclude appellant's statistical evidence related to the RIF, while also including a jury instruction "that placed a heightened burden" on appellant because he was part of a RIF. *Jelinek III* at ¶ 28. Specifically, this court noted the apparent discord where the trial court "instructed the jury that [appellant] needed to come forward with additional evidence, but disallowed discovery and introduction of the evidence." *Id.* at ¶ 31. Having determined that the matter must be remanded for a new trial based on an unrelated assignment of error, this court overruled the third assignment of error as moot, but further observed: "If, when the case is retried, Abbott intends to argue that the elimination of Jelinek's position

was part of an overall reduction in force in order to receive the heightened jury instruction, Jelinek should be allowed to rebut Abbott's claim by means of statistical evidence." *Id.* at ¶ 32.

{¶ 29} Following this court's remand for a new trial, the trial court filed a pretrial agreed scheduling order (on December 28, 2015) instructing the parties to brief certain agreed upon issues as motions in limine. In that order, the court raised the following question regarding statistical evidence: "Is statistical evidence regarding the 1997 and 2014 RIF's relevant and probative as to any issues in this case?" (Dec. 28, 2015 Decision at 2.) On February 19, 2016, Abbott filed pretrial briefs addressing both RIF evidence and statistical evidence; in that briefing, Abbott represented it "does not seek the heightened RIF-related jury instruction" at trial. (Defendants' Brief on RIF Evidence at 2.) Also on that date, appellant filed his pretrial brief on statistical evidence.

{¶ 30} On March 17, 2016, the trial court filed a decision and entry regarding the briefings filed February 19, 2016. With respect to the issue of statistical evidence, the trial court noted appellees had withdrawn their request for a heightened RIF jury instruction and, therefore, found the presentation of statistical evidence was unnecessary based on this court's decision in *Jelinek III.*

{¶ 31} As noted above, appellant asserts there is nothing in the language of *Jelinek III* that suggests statistics are admissible only if a defendant seeks the heightened jury instruction. We do not, however, construe the trial court's decision as simply foreclosing the use of statistics based on appellees' decision not to seek a heightened RIF jury instruction. Rather, the trial court further determined, "without consideration or limitation by the inclusion of a heightened standard," there was "no probative value in the presentation of raw statistics." (Mar. 17, 2016 Decision & Entry at 4.) In this respect, and independent of the issue of a heightened instruction, the trial court found the statistics sought to be introduced by appellant did not comply with prior decisions of this court, including our decision in *Boggs v. Scotts Co.*, 10th Dist. No. 04AP-425, 2005-Ohio-1264.

{¶ 32} In *Boggs*, this court surveyed prior decisions of this district dealing with the use of statistics as proof of discrimination, including *Dahl v. Battelle Memorial Inst.*, 10th Dist. No. 03AP-1028, 2004-Ohio-3884, and *Swiggum v. Ameritech Corp.,* 10th Dist. No. 98AP-1031 (Sept. 30, 1999). In *Dahl*, this court determined that a plaintiff's " 'raw

statistics * * * do not account for variations among employees in skill level, job function, and education in variables that necessarily must be accounted for in establishing a probative value of the raw numbers given.' " *Boggs* at ¶ 16, quoting *Dahl* at ¶ 18. Accordingly, this court "recognized that unelaborated statistics that fail to consider independent variables such as job skills, education, experience, performance or self-selection, were insufficient to establish a material issue of fact." *Id.,* citing *Dahl,* citing *Swiggum.* In *Swiggum,* this court similarly found flawed the statistical evidence offered by a plaintiff where such evidence "failed to take into consideration any independent variables that might explain the association between age and termination rates, including job skills, education, experience, performance or self-selection." *Id.*

{¶ 33} In the instant case, appellant sought to introduce at trial the report of his expert, William Notz, who concluded that the overall statistics from Abbott regarding the 1997 RIF "show statistical significance (at the o.05 level) between terminations of workers over 40 vs. those under 40." (Aug. 6, 2015 Notz Report at 1.) With respect to such statistics, Notz opined "it is very unlikely that this pattern of terminations and ages would have occurred simply by chance." (Aug. 6, 2015 Notz Report at 1.)

{¶ 34} In Abbott's pre-trial brief regarding statistical evidence, Abbott's expert, Brendan P. Burke, submitted an expert report in which he disagreed with the above conclusion. Specifically, Burke found Notz's single variable analysis to be deficient, stating that "Dr. Notz uses a simple approach that includes only age and termination status as variables." (Sept. 10, 2015 Burke Report at 12.) Burke opined that a more valuable analysis would be multivariate in nature, which "takes into account other factors that may have been important in a RIF such as employee location, tenure, time in the current position, performance ranking, supervisor, disciplinary history, etc." (Sept. 10, 2015 Burke Report at 8.)

{¶ 35} In challenging the statistical evidence submitted by appellant, Abbott's pre-trial brief also cited the deposition testimony of Notz. In his deposition, when questioned whether he could conclude the statistical significance he identified indicated Abbott discriminated against workers based on age, Notz responded: "If I was asked, can you assert that age was the cause of this, was a causal factor, I wouldn't be able to assert that."

(Notz Depo. at 54.)  Notz further acknowledged in the deposition that his analysis of the 1997 Abbott statistics only looked at the ages of the individuals terminated.

{¶ 36} Appellant acknowledges the analysis of his expert is the type of inquiry this court has deemed problematic regarding the use of statistical evidence.  Appellant contends, however, that the analysis utilized by this court in cases such as *Boggs, Swiggum*, and *Dahl* is "flawed," and that multiple regression analysis often gives the wrong answers.  (Appellant's Brief at 10.)

{¶ 37} We note that in *Boggs,* the plaintiff brought an age discrimination action in which the same plaintiff's expert as in the instant case, Notz, submitted an affidavit in which he compared the termination rate (as part of a RIF) for those employees under age 40 and those over age 40.  In finding the statistical evidence submitted in that case not probative of discrimination, this court held in part:

> [I]n the case at bar, Notz's affidavit indicates that he only looked at the number of persons above and below the age of 40 who were selected for termination.  There is no indication that other data were available to him or were used in rendering his report.  It may be that some of the departing employees over the age of 40 were terminated for legitimate reasons, such as poor performance or lack of appropriate skills.  They may have been terminated in favor of retaining older employees, or they may have accepted early retirement.  Other factors may have been involved, but looking only at the ages of those affected by the reduction in force does not indicate what those other factors were.  Thus, appellant's statistical evidence was not probative of whether Scotts decided to terminate her employment based solely upon her age, and we agree with the trial court that summary judgment for Scotts on this question was proper.

*Boggs* at ¶ 18.

{¶ 38} In the case sub judice, the trial court relied on *Boggs* and its progeny to find there was "no probative value in the presentation of raw statistics," and the court reiterated its earlier ruling that "again, '[a]ny testimony to this effect that fails to take into account the variations among employees in skill, etc., should be prohibited.' "  (Mar. 17, 2016 Decision & Entry at 4.)  Despite appellant's contention that this court's line of cases is flawed, we adhere to this court's precedent that "unelaborated statistics that fail to consider independent variables" are not probative of discrimination.  *Boggs* at ¶ 16.

Accordingly, we find no error with the trial court's determination that the statistical evidence offered by appellant did not meet the criteria required by this court's prior decisions, including *Boggs.*

{¶ 39} Appellant also contends the trial court erred in failing to properly allow circumstantial evidence to establish age discrimination. Appellant first challenges the trial court's ruling on motions in limine filed by Abbott regarding the departure of three former Abbott employees (Insani, Lindberg and Stadtlander) who, according to appellant, were terminated after reaching the age of 50 under circumstances comparable to those that took place in 1997.

{¶ 40} However, similar to the above discussion regarding statistical evidence, raw data indicating that three employees over the age of 50 were terminated does not, in isolation, give rise to an inference of discrimination. *See Swiggum* ("evidence that workers over the age of fifty left [defendant's employment] is, standing alone, not probative of the reasons underlying this particular plaintiff's termination"). Further, Ohio and federal courts have declined to give significance to small sample sizes such as those offered by appellant. *See*, *e.g.*, *Baer v. Scotts Co.*, 10th Dist. No. 01AP-323 (Dec. 6, 2001) ("Appellant's small statistical sample and the failure to take into account any independent variables renders his statistical evidence insufficient to support an inference of discrimination."); *Jones v. First Horizon Natl. Corp.*, W.D.Tenn. No. 09-2029-STA (June 9, 2010) (evidence that three other employees lost their jobs during RIF "does not constitute a pattern," and, therefore, such fact "fails as additional circumstantial evidence of discriminatory motive," and further fails as statistical evidence based on small sample size); *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 267 (6th Cir.2010) (trial court did not err in holding mere showing that two oldest employees were selected for termination constitutes additional evidence of discrimination as "such a small statistical sample is not probative of discrimination"); *Alberico v. Leap Wireless Internatl., Inc.*, W.D.Ohio No. 3:13-cv-141 (July 18, 2014) (sample size of at most seven employees "not sufficient to evidence discrimination"). Here, the trial court could reasonably find that evidence regarding the termination of three employees, occurring apparently several years after the events at issue, and involving different decision makers,

was not probative as to whether appellant himself was discriminated against based on age.

{¶ 41} Appellant also contends the trial court precluded him from presenting evidence that Abbott routinely collapsed territories and reorganized positions in order to eliminate older employees. Appellant asserts that Abbott employs few individuals over the age of 50, and that this evidence could lead a jury to conclude it engaged in a pattern or practice of eliminating older employees.

{¶ 42} By way of background, the issue of collapsed territories was the subject of an assignment of error raised by appellant in the last appeal, and this court's decision provided remand instructions regarding this matter. Specifically, in *Jelinek III,* this court determined that the trial court, during the 2011 trial, abused its discretion in "taking the extreme position that any mention of the quality of the territory related only to constructive discharge," as such evidence "was relevant to show that the offer of the territory was pretextual." *Jelinek III* at ¶ 22. Accordingly, this court held that evidence "the territory was 'collapsed' from twelve counties to two shortly before it was offered to Jelinek addresses both the issue of pretext, and the reason why Jelinek was reluctant to accept the territory." *Id.*

{¶ 43} On review, we find no abuse of discretion by the trial court in following this court's remand mandate as to the issue of collapsed territories. During the instant trial, the trial court permitted appellant to present evidence as to whether the Indiana territory was collapsed. On this point, counsel for appellant argued in opening statements that the evidence would indicate appellant "got a voicemail message that Gary was a collapsed territory. And a collapsed territory means that no one is effectively serving it, and they disperse the sales accounts to the surrounding salesman." (Tr. Vol. II at 416.)

{¶ 44} On direct examination, appellant testified as to information he obtained regarding the sales territory (including Gary, Indiana) offered to him by Abbott following the elimination of all PCDM positions in 1997. Appellant testified he received a voicemail "that announced the collapse of Gary, Indiana * * * in our region, and this was part of a reduction in force." (Tr. Vol. III at 631.) Appellant described a "collapsed territory" as one where "you say, okay, we're no longer going to put a person to cover that physically, so we're going to take it apart. We don't want to give up the business, we don't want to

give up the customer, so we collapse them into the adjacent territories." (Tr. Vol. III at 631.) According to the testimony of appellant, the territory at issue had been reduced from 12 counties to only 2 counties.

{¶ 45} We note that, in contrast to appellant's testimony, witnesses for Abbott testified the Indiana territory had not been collapsed. Those witnesses included Insani who, when asked whether salesmen in Gary, Indiana were removed and the accounts disbursed to other individuals, responded "[n]o." (Tr. Vol. XI at 2204.) Further, Monte Hinchman, Abbott's Chicago district manager (and the district manager for Lake County, Indiana, in 1997), denied that he assigned accounts to appellant in only two Indiana counties. Hinchman also testified Abbott had "no plans to collapse or change that territory." (Tr. Vol. XII at 2398-99.) Kara Kaiser, the Lake County sales representative who took over appellant's position after he resigned, denied that anyone ever indicated the territory should be collapsed.

{¶ 46} Apparently acknowledging that evidence as to whether the territory was collapsed was presented during the most recent trial, appellant argues the trial court should have also permitted evidence as to the crime rate, schools, closed hospitals, and recreation in Lake County. As noted by Abbott, however, this court's mandate in *Jelinek III* did not suggest evidence as to the crime rate of Gary, Indiana was relevant or admissible.

{¶ 47} We note appellant previously sought to introduce such evidence in the 2002 trial, an issue addressed by this court in *Jelinek II.* Specifically, appellant argued in his appeal of the 2002 verdict that the trial court "erroneously excluded from evidence a 1998 article from a newspaper which declared Gary, Indiana, as the most dangerous city in the United States for crime." *Jelinek II* at ¶ 52. Appellant further argued the trial court erred "in not permitting plaintiff's counsel to question witnesses regarding the desirability of working in Gary, Indiana, and by excluding from evidence photographs that plaintiff took of Gary, Indiana." *Id.* This court rejected appellant's argument, holding in part: "To the extent the article was offered to prove the truth of the matter asserted, it was inadmissible hearsay." *Id.* at ¶ 55. This court further found no error by the trial court in not permitting appellant's counsel to question witnesses regarding the desirability of working in Gary, Indiana as "not relevant to the inquiry in this case." *Id.* at ¶ 56.

{¶ 48} The record also supports Abbott's contention that appellant in fact presented such evidence at the most recent trial. During opening statements, counsel for appellant characterized the "Gary, Indiana territory" as "such an undesirable place." (Tr. Vol. II at 424.) Counsel further stated that "the main hospital in Gary had been closed. It was not a desirable place to go." (Tr. Vol. II at 421.) Appellant testified at trial that "[i]t would be very difficult, very difficult, to live in Gary, Indiana." (Tr. Vol. III at 782.) He also related that "Gary, Indiana was a disaster." (Tr. Vol. VII at 1373.) When asked by his counsel if "[t]he term 'Lake County territory' is * * * sweet selling Gary, Indiana," appellant responded: "I think it has more appeal than the word 'Gary, Indiana.' " (Tr. Vol. VIII at 1690.) During closing argument, counsel for appellant represented to the jury: "Gary doesn't have the best reputation of places to be." (Tr. Vol. XIII at 2622.)

{¶ 49} Thus, despite this court's prior pronouncements regarding the relevancy of such evidence, the record indicates the trier of fact was made aware of appellant's subjective views of the Indiana territory. In any event, appellant has not demonstrated error by the trial court in addressing the admissibility of this evidence.

{¶ 50} Appellant further argues the trial court erred in excluding the testimony of former defendants Stadtlander, Lindberg, Amundson, McNally, and Sipes. Appellant contends he should have been permitted to present evidence and argument as to the acts of agents who, he maintains, discriminated against him on Abbott's behalf. Appellant acknowledges that the claims against these former defendants have been fully adjudicated in the prior proceedings, but asserts a jury could reasonably conclude that, while each former defendant may not be individually liable, their actions taken together could make the corporation for which they work liable for discrimination. Appellant also argues it would be "near impossible for counsel to paint the general factual backdrop of [appellant's] case without presenting evidence or argument regarding the former individual co-defendants." (Appellant's Brief at 46.)

{¶ 51} The issue raised by appellant was the subject of a pre-trial motion in limine filed by Abbott, in which it sought to preclude at trial "any reference to or evidence relating to the alleged discriminatory actions and involvement of former co-Defendants in this matter" (i.e., Amundson, McNally, Stadtlander, Lindberg, and Sipes). (May 2, 2016 Defs.' Motion in Limine at 1.) Abbott noted in its motion that, over the 18-year procedural

history of the case, the discrimination claims against all individual defendants, except for Insani, had been resolved.  Specifically, Abbott observed, on April 23, 2002, the trial court granted Abbott's motion for directed verdict as to Amundson and Sipes, and appellant did not appeal that decision; further, on April 29, 2002, a jury found McNally and Stadtlander not liable, and appellant did not appeal the verdict in favor of those two defendants.  Finally, Abbott noted the trial court granted its motion for a directed verdict as to appellant's claim against Lindberg at the close of the 2011 trial and, on appeal, "the Tenth Appellate District upheld the directed verdict in favor of * * * Lindberg."  (May 2, 2016 Defs.' Motion in Limine at 3.)

{¶ 52}  In addressing Abbott's motion in limine on this issue, the trial court held in part that "relitigating any testimony of former Defendants for the purposes of showing former Defendants acted discriminatorily relitigates those very same issues of personal liability which have been previously decided by this Court and its prior jurors."  (May 10, 2017 Order for Procedure at Trial at 3.)  The court thus concluded that, "in order to preserve the prior final decisions of the courts and uphold the doctrine of *res judicata*, this Court must find the testimony of former Defendants Joy A. Amundson, Thomas M. McNally, William H. Stadtlander, Gregory A. Lindberg, and James L. Sipes is inadmissible."  (May 10, 2017 Order for Procedure at Trial at 4.)  Noting that the remaining issue for trial involved whether Insani had discriminated against appellant, the trial court further ruled: "If Plaintiff can identify portions of the former Defendants' testimony only pertaining to the actions of Karl Insani's alleged discriminatory conduct, the Court may reconsider the admissibility of the former Defendants' testimony on a limited basis."  (May 10, 2017 Order for Procedure at Trial at 4.)

{¶ 53}  On review, we find no abuse of discretion by the trial court in its decision limiting the testimony of former defendants to the remaining issue at trial, i.e., whether Insani discriminated against appellant on the basis of age.  As indicated above, appellant concedes the former defendants were, in the prior proceedings, found to have not acted in a discriminatory manner with respect to appellant.  At the most recent trial, appellant acknowledged that Abbott's elimination of his PCDM position was not discriminatory; rather, appellant's claim of age discrimination was predicated on Insani's decision,

following the RIF and elimination of the PCDM positions, to offer him the position in Lake County, Indiana.

{¶ 54}   Further, we agree with Abbott's contention that appellant cannot, in any event, demonstrate prejudice because the trial court permitted him to present evidence at trial regarding the conduct of these former defendants.   Specifically, the record indicates the 2011 trial testimony of Stadtlander, as well as his deposition testimony, was read into the record for the jury's consideration.   During closing argument, counsel for appellant cited, as one indicia of age discrimination, testimony by Stadtlander that appellant was not part of the RIF.   On this point, counsel stated: "Stadtlander, he ran the whole division. He said [appellant] wasn't [included in the RIF].   So that's pretext."   (Tr. Vol. XIII at 2618.)

{¶ 55} With respect to former defendant Amundson, appellant testified at trial as to the fact "[t]here had been a change of presidents.   A gal named Joy Amundson was sitting in the president's chair, and I tried reaching her and ending up leaving a voice mail message to her." (Tr. Vol. VIII at 1693.)  Appellant further testified: "I pleaded with her to look into the way I had been mistreated.   I felt that I had been discriminated against because of my age.   I was being forced into a position where they forced me to resign because the territory they had offered me was not really a competitive territory."  (Tr. Vol. VIII at 1694.)   Appellant stated that, after leaving Amundson a message, she corresponded by "letter, and basically just dismissed it."   (Tr. Vol. VIII at 1694.) According to appellant, Amundson "said, 'I looked into it.   You were being treated fairly by our corporation.' "  (Tr. Vol. VIII at 1694.)

{¶ 56}   Appellant also testified as to his interaction with former defendant Sipes, a human resource manager for Abbott during appellant's employment.   During direct examination, appellant testified that he asked Sipes to help him obtain a job at Abbott Pharmaceuticals, but that Sipes refused to help him.  According to appellant, Sipes "said I had a job in Gary, Indiana."  (Tr. Vol. III at 785.)  Appellant further testified "there was no flexibility in that period of time when I wasn't able to work to apply within Abbott to other jobs because I was blocked by Sipes."   (Tr. Vol. IV at 1012.)   During closing argument, counsel for appellant stated that "Sipes, the HR guy, was telling [appellant] regularly, when Dave said, I don't want this territory, I want something else, 'You took the territory.

You're stuck with it.  We're not going to look for another job for you.' "  (Tr. Vol. XIII at 2634-35.)

{¶ 57}  With regard to former defendant McNally, counsel for appellant declined to introduce portions of his testimony deemed relevant by the trial court.  Further, as noted by Abbott, the deposition testimony of Insani was read at trial and, during cross-examination of this witness, counsel for appellant inquired whether Insani "had to get approval" from individuals, including McNally, prior to making the offer to appellant of a position in Gary, Indiana.  In response, Insani stated: "To place people, yes."  (Tr. Vol. XI at 2247.)

{¶ 58}  Former defendant Lindberg, a sales manager for Abbott who reported directly to Insani, testified at trial.  During direct examination, Lindberg was questioned about the 1997 RIF, and he stated McNally gave a directive that "we were going to have to reduce the number of positions in our sales organization."  (Tr. Vol. XII at 2458.) Lindberg related that Insani was the individual "in charge of making those decisions, along with the regional managers."  (Tr. Vol. XII at 2459.)  He further testified that Insani made the decision to offer appellant the Lake County position.  According to Lindberg, "if we had a job available in Columbus, Ohio, we would have given that job to Dave Jelinek." (Tr. Vol. XII at 2483.)  He stated, however, "[t]here were no jobs" in Columbus following the RIF.  (Tr. Vol. XII at 2483.)  Lindberg further stated that Insani did not discriminate against appellant on the basis of age.

{¶ 59}  On cross-examination, counsel for appellant questioned Lindberg as to the "ages * * * of a number of employees of the company in the medical nutritionals" division at the time of the RIF.  (Tr. Vol. XII at 2531.)  Counsel inquired of Lindberg whether he had "a reason to know that they discriminated on the basis of age."  (Tr. Vol. XII at 2541-42.)  Lindberg responded: "I knew that we did not discriminate against anyone on the basis of age."  (Tr. Vol. XII at 2542.)  During closing argument, counsel for appellant challenged Lindberg's statement that he did not commit age discrimination.

{¶ 60}  Thus, the record supports Abbott's contention the trial court permitted testimony as to these former defendants, subject to the above limitation that such testimony pertain to the alleged discriminatory conduct of Insani.  On review, we find no

abuse of discretion by the trial court in its ruling with respect to the testimony of the former defendants, nor has appellant shown he was prejudiced by it.

{¶ 61} Based on the foregoing, appellant's first and second assignments of error are not well-taken and are overruled.

{¶ 62} Under the third assignment of error, appellant asserts the trial court erred in awarding costs to Abbott, while denying an earlier motion for costs filed by appellant. Appellant notes he had previously prevailed in the court of appeals, and was able to have the case remanded for retrial.

{¶ 63} Civ.R. 54(D) addresses the issue of costs, and states: "Except when express provision therefore is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs."  In general, "Civ.R. 54(D) grants trial courts discretion to order that the prevailing party bear all or part of his or her own costs."  *State ex rel. Reyna v. Natalucci-Persichetti*, 83 Ohio St.3d 194, 198 (1998).  In this respect, "[t]he Ohio Supreme Court has recognized that 'the rule [Civ.R. 54(D)] is not a grant of absolute right for court costs to be allowed to the prevailing party.' "  *Smallwood v. State*, 12th Dist. No. CA2011-02-021, 2011-Ohio-3910, ¶ 10, quoting *State ex rel. Gravill v. Fuerst*, 24 Ohio St.3d 12, 13 (1986).  Further, "an appellate court cannot reverse a lower court's decision regarding the allocation of costs absent an abuse of discretion."  *Id.*

{¶ 64} We note, following the most recent trial, both parties submitted proposed judgment entries regarding the final adjudicated verdict in the case.  On June 23, 2017, appellant filed a memorandum opposing Abbott's proposed judgment entry, asserting Abbott's request for costs "dating back to September 10, 1999" was "clearly at odds" with an earlier entry of the trial court in which the court denied costs to appellant.  More specifically, appellant's argument was based on a March 17, 2015 order of the trial court denying appellant's request for costs from October 28, 2005 and May 3, 2013.

{¶ 65} In that 2015 entry, the trial court held in part that "[e]xcessive time has elapsed between these judgments and the present.  Plaintiff has had the opportunity to seek costs at a more timely date, like during his time before this Court after the 2005 judgment or during the eight months before an order to stay the case was filed in January 2014.  Plaintiff chose not to file his requests during these times."  (Mar. 17, 2015 Decision & Entry Denying Motion for Costs.)

{¶ 66} In the trial court's final judgment entry, filed on July 11, 2017, the trial court ordered appellant "to pay all costs incurred in this case from September 10, 1999, to the present, except that Defendant is ordered to pay the costs of the 2003 appeal, Case No. 03APE06-614 (as contemplated under Rule 24(B) of the Ohio Rules of Appellate Procedure), pursuant to the Tenth District Court of Appeals' October 28, 2005 judgment entry." (July 11, 2017 Final Jgmt. Entry at 2.)

{¶ 67} Civ.R. 54(D) provides "no specific time period" by which a motion for costs is to be filed and, therefore, courts have interpreted the rule as requiring a motion for costs to be filed within a " 'reasonable' period of time." *Bookatz v. Kupps,* 39 Ohio App.3d 36, 38 (8th Dist.1987). *See also Martin v. Lake Mohawk Properties Owner's Assn.,* 7th Dist. No. 10 CA 869, 2011-Ohio-5132, ¶ 8, citing *Bookatz* ("The few courts confronted by the question have held that a motion to tax costs must be filed within a reasonable period of time.").

{¶ 68} As noted, with respect to the trial court's 2015 entry, the court found "[e]xcessive time has elapsed between these judgments and the present," and that appellant "had the opportunity to seek costs at a more timely date." However, the trial court deemed the request by Abbott for costs to be timely, having been filed shortly after the final verdict. On review, we find no abuse of discretion by the trial court in its decision with respect to the taxation of costs.

{¶ 69} Appellant's third assignment of error is not well-taken and is overruled.

{¶ 70} Based on the foregoing, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and NELSON, JJ., concur.

_____